ARTHUR W. BURNHAM *et al.* Defendants in Error, *vs.* CAROLINE ROTH *et al.* Plaintiffs in Error.

*Opinion filed February 16, 1910—Rehearing denied April 7, 1910.*

1. JUDICIAL SALES—*payment by master to creditor is pro tanto extinguishment of debt.* Payment by the master, to a creditor, of the proceeds of a foreclosure sale is a *pro tanto* extinguishment of the debt until some further action of the court; and while the rights of the parties might be affected by a subsequent disapproval of the sale, still the creditor cannot disregard the payment and enforce the collection of the original amount of the indebtedness.

2. SAME—*when remedy by motion to stay execution does not preclude bill in equity.* Section 87 of the present Practice act, authorizing a party intending to move to set aside an execution to apply to a judge for a certificate staying proceedings, applies only to a party to the execution, and hence the existence of this summary remedy at law does not preclude a bill in equity by strangers charging conspiracy in the execution sale and praying for an injunction, accounting and other relief.

3. SAME—*conspiracy in execution sale may be shown by acts of parties.* A conspiracy to enable parties to acquire title to valuable property at a small price by using a largely satisfied judgment at its original amount in redeeming and re-selling the property on execution, thereby increasing by several thousand dollars the

amount which other judgment creditors would have to advance to realize on their judgments, the object being to prevent such other creditors from bidding, may be sufficiently established by the acts of the parties and the surrounding circumstances.

4. PARTIES—*who are not necessary parties to bill to enjoin execution sale.* Where judgment creditors file a bill charging conspiracy to prevent them from redeeming from an execution sale and seeking to restrain the sheriff from paying out the redemption money or re-selling the property, a person who loaned money to one of the alleged conspirators to purchase the property need not be made a party; nor is the judgment debtor who has lost all rights in the property a necessary party.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Lake county; the Hon. CHARLES H. DONNELLY, Judge, presiding.

F. H. NOVAK, for plaintiffs in error.

HOLLAND & ELLIOTT, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Winthrop Harbor and Dock Company, a corporation, being the owner of certain real estate mortgaged it. The mortgage was foreclosed in the circuit court of Lake county and the mortgaged premises were sold under the decree of foreclosure. On August 13, 1903, the last day allowed by law for that purpose, a redemption was made from that sale in the name of Caroline Roth as a judgment creditor, by virtue of a judgment for $14,486.45 recovered by her in the superior court of Cook county, a transcript of which had been filed in Lake county. The amount required for such redemption ($12,330.35) was paid to the sheriff, who thereupon advertised and sold the premises under the execution on the Roth judgment to Lawrence C. Moore for $24,000 on September 5, 1903. On September 7, 1903, the appellee, H. Martin, being the assignee

of a judgment for $275.83 recovered by the Illinois Brick Company against the Winthrop Harbor and Dock Company, upon which an execution had been issued, redeemed from the sale of September 5 by delivering his check for $24,000 to the sheriff, who thereupon issued his certificate of redemption and advertised the premises for sale under the execution on the Illinois Brick Company's judgment on September 30, 1903. The defendants in error, who are the owners of judgments against the Winthrop Harbor and Dock Company, then filed the bill in this case against Caroline Roth, William C. Heinroth, J. Husak, F. H. Novak, Lawrence C. Moore, H. Martin and others, charging them with conspiring to acquire the title to the premises involved and prevent the defendants in error from redeeming from the sale thereof or receiving any part of the proceeds of such sale on their judgments, and alleging that the judgment of Caroline Roth, under which the redemption of August 13, 1903, was made, had been before that time in large part paid and that not more than $2500 remained due thereon. The bill prayed for an injunction restraining the sheriff from paying out the sum deposited for the redemption from said sale of September 5 and enjoining the sale advertised for September 30, for an accounting and ascertainment of the amount properly due on the Caroline Roth judgment, for the setting aside of the sale of September 5, 1903, and for a new sale. A temporary injunction was issued. The defendants to the bill answered it, and after a reference to the master the cause was heard and a decree was rendered making the injunction theretofore granted perpetual; setting aside the sale of September 5, 1903; reducing the judgment of Caroline Roth to $2297.60; ordering a sale of the premises by the master; directing the manner in which it should be conducted and providing for the distribution of the proceeds. The Appellate Court affirmed this decree.

The plaintiffs in error insist that it was erroneous to find that any part of the Roth judgment had been satisfied; that the purchaser at the sale of September 5 and the redeeming creditors could not be affected by the excessive amount of the Roth judgment, and that the defendants in error had a complete and adequate remedy at law by motion to quash the execution or compel the entry of partial satisfaction of the judgment.

The Winthrop Harbor and Dock Company on November 26, 1900, executed twenty-eight promissory notes for $600 each and one for $700, secured by a second mortgage on real estate other than that involved in this suit. On March 12, 1903, Caroline Roth recovered a judgment in the circuit court of Kenosha county, Wisconsin, on eight of these $600 notes, which was satisfied on execution. The judgment in the superior court of Cook county was rendered on March 30, 1903, on the other twenty-one notes secured by the mortgage. On April 6, 1903, a decree was rendered by the circuit court of Lake county in a suit brought to foreclose the prior mortgage, to which Mrs. Roth was made a party, finding the total amount due her upon all the notes, except one which was paid, to be $18,957.16. A sale was made under this decree on May 19, 1903, satisfying all prior liens and Mrs. Roth's lien to the extent of $11,206.83. This amount, together with the amount realized on the Wisconsin judgment, reduced the sum due on the indebtedness of the Winthrop Harbor and Dock Company to Mrs. Roth, represented by these notes, to $2297.60 on September 5, 1903, as found by the circuit court.

It is insisted by the plaintiffs in error that the amount received by Mrs. Roth from the foreclosure sale should not be regarded as a payment on the Cook county judgment, both because there is no satisfactory evidence of the identity of the indebtedness represented by the judgment and that included in the foreclosure decree, and because the sale, though made in May, was not confirmed until Oc-

tober, and the payment of the money could not be regarded as satisfaction until the sale had been confirmed. In our view of the evidence there is no doubt that the Cook county judgment and the Wisconsin judgment were, respectively, rendered upon separate portions of the indebtedness represented by the twenty-nine notes before referred to, which had been endorsed to Mrs. Roth, and that the decree of foreclosure included the whole indebtedness represented by all the notes. The payment of the money by the master at the time of the sale, to the extent of the amount paid, extinguished the indebtedness mentioned in the decree, whether such sale and payment were ever reported to the court and approved or not. After such payment the creditor had no right to disregard it and enforce the collection of the original amount of the indebtedness. The rights of the parties might be affected by the subsequent disapproval of the sale and cancellation of the payment, but until some action by the court the payment by the master must be regarded as an extinguishment, *pro tanto,* of the debt.

The plaintiffs in error contend that Lawrence C. Moore, in whose name the purchase was made at the sale on September 5, and H. Martin, in whose name the redemption from such sale was made, were without notice of the fact that the full amount of the Roth judgment was not due thereon and could not be affected by reason of that fact. In fact, however, neither Moore nor Martin had any interest in the transaction. They came into it merely as names under which other persons sought to conceal their identity. They knew nothing of the property, were never interested in its purchase, and simply permitted the use of their names for others' purposes. Underwood, who caused the bidding to be done in Moore's name, when examined as a witness refused to disclose whom Moore represented but admitted that he had no interest in the bid. He was made a party to the bill but made no defense. Martin's name was used to represent a syndicate organized by the plaintiff in error

Novak, and of which Novak was a member but Martin was not. What was done in Martin's name was done by Novak, who was a lawyer, and whatever knowledge Novak had was the knowledge of Martin and those acting in his name.

The complainant in the foreclosure suit resulting in the sale of the property was Mrs. Foley. William C. Heinroth was her son-in-law, and after Mrs. Foley's death, which occurred during the pendency of the suit, Mrs. Heinroth, who was an executrix of her will, was substituted as a complainant. Heinroth was a nephew of Mrs. Roth, and was a party to the suit individually and as trustee under a mortgage given to secure certain bonds of the Winthrop Harbor and Dock Company. He was treasurer of the Winthrop Harbor and Dock Company at the time the notes held by Mrs. Roth were given. They were given to the Western Telephone Construction Company, of which Heinroth was an officer, and were afterward sold to Mrs. Roth. Mrs. Roth was over seventy years of age, and it is to be inferred did not personally manage her business. Heinroth consulted her about it to some extent. Novak occupied a room in Heinroth's office. The sale under Mrs. Foley's foreclosure decree was made on May 19, and on June 18 an execution was issued on Mrs. Roth's Cook county judgment, under which the redemption was made on August 13. Part of the money for making this redemption was furnished by Luella Heinroth, a sister of William C. Heinroth, who was her business adviser. Before this redemption was made Heinroth was trying to dispose of Mrs. Roth's judgment. He asked Novak's assistance, and Novak procured plaintiff in error J. Husak to make a proposition, in writing, for the purchase of the judgment for $2000 cash and the amount of the redemption money, $12,330.35, and interest thereon, to be paid within five years if he secured the property and within thirty days after the sale if he did not. This proposition

was written by Novak and presented to Heinroth for Mrs. Roth on August 25. It was accepted by her, and on August 31 an assignment of the judgment was executed to Husak, who paid Novak $2000 therefor. Husak was a merchant tailor living in Chicago, who knew nothing about the property in question, the judgment or the company. He invested the $2000 on Novak's representation that he would get his money back and at least $1000 profit. Within a day or two after the assignment to Husak, F. H. Gade, a lawyer representing the defendants in error, told Heinroth, over the telephone, that his clients had in mind either to purchase the property or to obtain a partial satisfaction of their claims from the proceeds of the sale, and called his attention to the fact that the judgment, being wholly unsatisfied of record, might be used to their serious detriment. He stated that he was ready to pay the amount actually due on the judgment, and requested an interview for the purpose of arriving at an understanding as to the rights of the parties. Heinroth declined an interview, refused to give any information or to talk about the matter, and stated that his people intended to get that property. Husak went to Waukegan with Novak and attended the sale. He and Novak both made bids, as did Westwood, a lawyer representing Moore, to whom the property was struck off. Novak at once declared his intention of redeeming under two other executions then in the sheriff's hands. Gade offered to pay these executions, but objections were made by the sheriff and his deputy. These executions were finally paid, but no money was paid on the sale and no certificate of sale was issued on that day. The sheriff finally declared that there was not time enough to finish the matter that day, though the sale had been completed shortly after two o'clock in the afternoon. On Monday, September 7, Novak and Westwood returned to Waukegan, a certificate of sale to Moore was issued, Westwood delivered to the sheriff Moore's check for $24,000, the sheriff en-

dorsed the check to Husak and delivered it to Novak, who, under written authority from Husak, gave receipts in the latter's name for the amount of the redemption money and for $11,426.21 on account of the execution. Thereupon Novak gave his check for $24,000 to the sheriff, who endorsed and delivered it to Westwood, and the latter thereupon receipted, in Moore's name, for $24,000 as a redemption from the sale to Moore, the certificate of which sale was surrendered to the sheriff. The transaction was concluded by Novak and Westwood exchanging these checks on the train returning to Chicago. A receipt given by Husak to Novak for $8391.07 was introduced in evidence, but Husak testified that he had received only $2250 although he ought to get $750 more, as Novak had assured him of $1000 profit.

Direct testimony of witnesses to the conversations by which a fraudulent scheme is agreed upon is rarely available. Such schemes, devised secretly, usually rest in the knowledge of the conspirators alone, and it is only the acts of the parties co-operating to bring about the fraudulent result which are capable of proof. Such acts, however, and the circumstances surrounding them, may afford full proof of the common fraudulent design. We conclude from the evidence that Heinroth and Novak knew that the Cook county judgment was in large part satisfied; that Husak was used for the purpose of enabling Novak, and those whom he represented, to acquire the title to this property, which was represented to be worth $60,000, at a small price, and that the sale of September 5 and the use of the judgment at its full amount were parts of a plan to prevent bidding on the part of other judgment creditors by fraudulently increasing by several thousand dollars the amount of cash they would be required to advance before receiving anything on their own claims.

It is said that equity had no jurisdiction to entertain the bill because the complainants had an adequate remedy

at law by application to the court from which the execution issued, to stay it, and require a credit thereon reducing the amount to be collected to what was actually due. A summary remedy exists for the abuse of process or irregularity in its issue or execution by motion in the court from which the process issues. Strangers to the record cannot, however, avail themselves of this remedy. Section 87 of the Practice act, which is the same as section 65 of the former Practice act and substantially the same as section 46 of the Practice act of 1845, authorizes a party intending to move to set aside or quash an execution, replevin bond or other proceeding, to apply to a judge in vacation for a certificate staying proceedings. It has been held that this refers' only to a party to the "execution, replevin bond or other proceedings" which it is sought to quash and that strangers must seek their rights by some other remedy. *Bonnell* v. *Neely,* 43 Ill. 287; *Hitchcock* v. *Roney,* 17 id. 231; *Knights* v. *Martin,* 155 id. 486.

The decree, after setting aside the sale to Moore and enjoining the sale under Martin's redemption, directed a sale by a special master, at which Husak should be regarded as bidding the amount of the redemption money deposited by Mrs. Roth, with interest, and the amount actually due on her judgment, and if his bid was not raised, then that the decree should be vacated and the bill dismissed. If a sale was made the decree directed the payment to Husak of the two amounts due him on the redemption money and judgment assigned to him and that the residue of the purchase money be brought into court for distribution. It is objected that this decree gives to Husak for the second time money which he has already received, and fails to provide for the re-payment to Martin of the money which he paid to the sheriff for the redemption from the Moore sale. The exchange of checks and receipts in connection with the sale and redemption was formal. No money or

value passed in connection with those transactions. The only cash which appears in the whole controversy is the $12,330.35 which was deposited on August 13, 1903, and Husak's $2000 which went to Mrs. Roth for her assignment. The amount of the judgment should be paid to Husak under the assignment and also the redemption money. For the latter he will be under obligation to account to Mrs. Roth under his contract with her. If Novak has advanced to him the amount of the judgment, that is a matter to be settled by them but not in this suit. No question of that kind is presented here.

It is claimed that Luella Heinroth has an interest in the subject matter of this suit and should have been made a party and that her interest should have been protected. She has no legal interest in the subject matter, so far as appears. She lent a sum of money for the purpose of purchasing this property and took Novak's obligation for its return. It was to be secured by her holding the certificate of redemption until it could be secured by trust deed on the premises. She is merely a creditor of Novak or of his principals, but she has no legal interest in this controversy.

It is also contended that the Winthrop Harbor and Dock Company, the judgment debtor, is a necessary party to the bill. This company had no right of redemption in the premises, no legal interest to be protected or foreclosed. It could merely occupy the premises until the title should pass to the purchaser. Whatever decree should be made could not affect its rights, for it had none. It was therefore not necessary to make it a party.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*