## AUGUSTUS L. EVANS

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. CRIMINAL LAW—*conspiracy.* In order to sustain a conviction for a conspiracy, the object of the conspiracy must be proved as laid in the indictment, and there must be more than one person shown to be guilty. It needs something more than proof of a mere passive cognizance of fraudulent or illegal action of others to show a conspiracy. There must be something showing active participation of some kind by the parties charged.

2. On an indictment against A, B and C, for a conspiracy fraudulently to obtain from a prosecuting witness a sum of money by means of false pretenses, it is incumbent on the people to prove the conspiracy, as alleged, by clear and satisfactory evidence. If what B and C did, though imprudent and improper, was not done with a design to defraud the prosecutor, or done with a view to assist A to defraud him, and the subsequent acts of A were not done in pursuance of any previous understanding with B and C, or done pursuant to their advice or direction, a conviction of A can not be sustained.

3. Where A procured B to convey a lot to C, and C to give to A his three promissory notes for $2778, each of the same date and rate of interest, and maturing on the same day, secured by three separate deeds of trust on the lot, one for each note, and caused the deed to C and one deed of trust to be recorded, so that the record would show only one incumbrance for $2778, and by means of false pretenses sold two of the notes as first liens on the property, and then disposed of the other to D as collateral security for the loan of $2500, by means of similar false pretenses, the proof failing to show bad design or intent on the part of B or C in making the conveyance or notes and deeds of trust, or knowledge of the use A intended to make of them, or that they had any connection whatever with his fraudulent acts subsequently done, it was *held,* that a conviction of A for a conspiracy with B and C to defraud D, by means of false pretenses, could not be sustained.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. VAN ARMAN & GORDON, for the plaintiff in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Plaintiff in error was convicted and sentenced to imprisonment in penitentiary for the term of three years, for conspiracy.

It is provided by sec. 46 of the Criminal Code: "If any two or more persons conspire and agree together, with the fraudulent or malicious intent wrongfully and wickedly to injure the person, character, business or property of another, or to obtain money or other property by false pretenses, or to do any illegal act injurious to the public trade, health, morals, police or administration of public justice, or to prevent competition in the letting of any contract by the State or the authorities of any county, city, town or village, or to induce any person not to enter into such competition, or to commit any felony, they shall be deemed guilty of a conspiracy; and every such offender, and every person convicted of conspiracy at common law, shall be imprisoned in the penitentiary not exceeding three years, or fined not exceeding $1000." R. S. 1874, p. 358.

The indictment under which plaintiff in error was convicted, contains but one count. It charges, that "Charles A. Gale, Augustus L. Evans and Albert W. Webster unlawfully, falsely and feloniously did then and there conspire and agree together, with the fraudulent and malicious intent wrongfully and wickedly to obtain of and from one Augustus N. Eddy $2500, in lawful current money of the United States of America, of divers issues and denominations, to the jurors aforesaid unknown, of the value of $2500, of the money and personal property of the said Augustus N. Eddy, by means and by use of false pretenses, contrary to the statute," etc.

The facts in proof were, in substance, these: Plaintiff in error, who seems to have been engaged, to some extent, as a land broker, undertook to sell a certain lot in Chicago for Webster. Plaintiff in error went to Gale, whom he had previously known, and made an agreement with him, whereby Gale was to accept a deed of the lot, and execute his three promissory notes, for $2778 each, payable to the order of plaintiff in error in one year from date, with interest at eight per cent per annum, and secure each note by a separate deed of trust on the lot, to George Scoville, trustee. Accord-

25—90 ILL.

ingly, Webster deeded the lot to Gale, and Gale made his three promissory notes to plaintiff in error, for $2778 each, bearing eight per cent interest from date, and secured each note by a separate deed of trust on the lot to George Scoville, trustee, all bearing date October 28, 1874. Plaintiff in error then took Webster's deed, promising Gale to place it upon record, which he did, and on the 30th of October, 1874, plaintiff in error put one of the deeds of trust upon record. In the first part of the same month plaintiff in error sold one of the notes and deeds of trust to Mayer, cashier of the "Prairie State Loan and Trust Company." Plaintiff in error, in his negotiation with Mayer, falsely represented Gale to be a resident of Cincinnati. Subsequently, Mayer becoming dissatisfied with the purchase in consequence of his inability to find Gale, requested plaintiff in error to find another purchaser for the note. This plaintiff in error undertook to do, and, shortly afterwards, accomplished it, through the agency of D. N. Bash, by procuring Horace F. Waite to purchase the note and deed of trust. This was in November next after the execution of the notes and deeds of trust.

. While the negotiations in regard to this note and deed of trust were pending, plaintiff in error went to the "Union Trust Bank," and entered into negotiations with its president, Stephen W. Rawson, to sell another of the notes and deeds of trust to him. This latter negotiation was commenced about the middle of October, and resulted in the sale of one of the notes and deeds of trust to the bank. In all of these negotiations, plaintiff in error presented an abstract of title, showing the title of the lot in Gale, and the record of one trust deed corresponding exactly with that sold to each of the parties; and, during the negotiations, plaintiff in error stated to the respective parties that the particular note and trust deed he was negotiating was the first incumbrance. The result was, that each party purchased supposing his to be the only incumbrance on the lot. It is also shown, that during these negotiations plaintiff in error represented that Gale was a resident

of Cincinnati, who was coming to Chicago to reside, and that he had bought the lot for a residence.

After having thus disposed of the two notes and deeds of trust, and sometime in the month of February following, plaintiff in error went to Augustus N. Eddy, of the firm of Eddy, Harvey & Carter, merchants, and proposed to sell to him the remaining note and deed of trust. Eddy refused to make the purchase, but offered, if plaintiff in error would make his own note for $2500, on six months' time, and also indorse and deliver the note and deed of trust for collateral security for the payment of his note, he would lend him $2350 for six months. Plaintiff in error accepted the offer, made his own note to Eddy for $2500, payable in six months, and delivered it, with the remaining note and deed of trust, indorsed by him, as collateral security for the loan. When the note of plaintiff in error became due, he went to Eddy and paid it, and took it up. To make this payment, he negotiated a loan of one Cole, and to secure that loan, Eddy, upon request of plaintiff in error, transferred the Gale note and deed of trust to Cole. Having neglected to limit his liability as indorser, when the note of plaintiff in error to Cole fell due, plaintiff in error neglecting to pay it, Eddy became liable on his indorsement of the Gale note.

Eddy's evidence in regard to the transaction is: "Mr. Evans wanted to sell me the note, and I told him I wouldn't buy it, but if he would indorse it I would take his own note as security. I sent the abstract, trust deed and note to my attorney, who passed on them, and the next day Mr. Evans came in and gave me his note for $2500. In six months his note became due, and he came in and took up his own note on my indorsing this note to him, he taking this note to the bank and getting some one else to pay him some money on this original note. This note fell due, then, on the 28th of October, 1875, at which time I received notice from the parties who purchased the note from him that the note had not been paid, and asking me to take it up, which I did. This

note, secured by the trust deed, I received as security. Evans told me that Mr. Gale lived in Cincinnati, and two or three days before it came due Evans came in and said Mr. Gale would be here from Cincinnati in two or three days. After that I saw no more of Mr. Evans until in court yesterday. I heard no more of the matter until I brought the case before the grand jury. About the time this note fell due, I went with Mr. Waite and Mr. George Scoville to Mr. Rawson's bank, and was shown another note and trust deed, bearing all the marks of this one.  *  *  *  At the time Evans presented this note and trust deed to me with the abstract, nothing was said about there being any other trust deeds or notes in connection with this land. The abstract showed a trust deed of that amount and date. Never saw Webster until he appeared for trial, nor Gale until I saw him in jail, with Mr. Chas. Reed, yourself, and Mr. Rawson.  *  *  *  I don't think Mr. Evans asked me to indorse the note. He knew my indorsement was on it when he took it up. I think he saw me put my indorsement on the note. I put it on unasked."

The abstract was brought down to the 30th of October, 1874, and showed, only, the record of one of the deeds of trust, and since they were all alike, and the certificates of the recorder on them showed the same docket number, and that they were all recorded October 30, 1874, neither of the purchasers had any notice of the existence of the other deeds of trust. That two of the certificates of the recorder had been changed, is evident from the evidence, and it is most probable that this was done by plaintiff in error.

Before trial, Gale entered a plea of guilty, which he subsequently asked leave to withdraw, but this was denied by the court. Webster was found not guilty by the jury.

It is with some regret that we feel compelled to reverse the judgment against plaintiff in error. His knavery in the several transactions is clearly proved, and morally he deserves all the punishment which the judgment imposes upon him.

But we are only to determine whether his conviction can be sustained under the well established rules of the law applicable to the offense for which he was indicted and of which he was convicted.  If not properly convicted of that offense, it is utterly immaterial how guilty he may be of other offenses.

The offense charged, as has been shown, is, that plaintiff in error, Webster and Gale, unlawfully, etc., did then and there conspire and agree together, etc., to obtain of and from one Augustus N. Eddy $2500, etc.

The object of the conspiracy must be proved as laid in the indictment.  Roscoe's Criminal Evidence, 420.

"An averment in an indictment for a conspiracy, that the defendants conspired to defraud A, is not supported by proof that they conspired to defraud the public generally, or any individual whom they might meet and be able to defraud." Wharton's Criminal Law, (7th ed.) vol. 2, § 2357; *Commonwealth* v. *Harley*, 7 Metc. 506.

Where an indictment against A, B, C and D charged that they conspired together to obtain, " viz : to the use of them the said A, B and C, and certain other persons to the jury unknown," a sum of money for procuring an appointment under government, it appeared that D, although the money was lodged in his hands to be paid to A and B when the appointment was procured, did not know that C was to have any part of it, or was at all implicated in the transaction,— Lord Ellenborough said : "The question is whether the conspiracy as actually laid be proved by the evidence.  I think it is not as to D.  He is charged with conspiring to procure the appointment through the medium of C, of whose existence, for aught that appears, he was utterly ignorant.  Where a conspiracy is charged it must be charged truly." *Pollman's case*, 2 Campb. 233.  See also, 2 Russell on Crimes, (7th Am. ed.) 702.

To authorize a conviction for conspiracy, there must be proved to have been more than one person guilty.  2 Wharton's Crim. Law, (7th ed.) § 2339; 2 Russell on Crimes, (7th

Am. ed.) 674. And "it needs something more than proof of a mere passive cognizance of fraudulent or illegal action of others, to sustain conspiracy. There must be something showing active participation of some kind by the parties charged." 2 Wharton's Crim. Law, (7th ed.) § 2355. This, the author last referred to illustrates by reference to the case of *Regina* v. *Barry,* 4 F. & F. 389, where certain wharfingers and their servants were indicted for a conspiracy to defraud by false statements as to goods deposited with them and insured by the owners against fire. It was held, that evidence that false statements were knowingly sent in by the servants, which would be for the benefit of the masters, and that afterwards the servants took fraudulent means to conceal the falsehood of the statements, with evidence that the employers had the means of knowing the falsehood, and knew of the devices used to conceal it, was no evidence to sustain the charge of a fraudulent conspiracy between the employers and servants."

That Webster was properly acquitted there can not be the slightest question. There was no evidence to impeach the *bona fides* of his conduct in conveying the lot, and no evidence that he had any knowledge of any improper purpose of plaintiff in error in having him to convey to Gale, who was an entire stranger to him, or that he directly or indirectly advised with plaintiff in error in regard to or was privy to what he did in having the notes and deeds of trust made, or to what he did in subsequently imposing them upon others.

There is not a particle of evidence that, when Gale made the notes and deeds of trust, he knew why plaintiff in error had them made, or what disposition he intended to make of them. There is no proof that any agreement or understanding ever existed between Gale and plaintiff in error that any particular person should be defrauded or injured by the use of the notes and deeds of trust, or that they should be traded or sold to any particular person, and no proof that he in any way aided, advised or was even cognizant of the disposition

plaintiff in error made of them.   He did not know Eddy, nor of the transfer of the note and deed of trust to him.

All that can be said of his conduct is, that he permitted himself to be used in a transaction in which a better, or perhaps, a wiser man would not have permitted himself to have been used.   Three notes of equal amounts, maturing at the same time, and three separate deeds of trust to the same trustee on the same property, one deed securing each note, might, possibly, be honestly executed; but the reasonable inference from the circumstance is the other way.   Gale had reason to believe, from the character of the transaction, that roguery of some kind was intended—but not, necessarily, what.

From the entire evidence, it would seem that plaintiff in error kept his own counsels, knowing, doubtless, that he could make the use he did of Gale without being closely questioned, and that Gale was contented to let him do so and receive whatever plaintiff in error might choose to give him.

It was incumbent on the people to prove the conspiracy as alleged, by clear and satisfactory evidence.   To say that it is proved by such evidence that either Gale or Webster conspired to defraud, as charged, Augustus N. Eddy, is to entirely disregard what is preserved in the record as the evidence. The device gotten up seems to have been an invention of the plaintiff in error alone, and his subsequent use of it does not appear to have been in pursuance of any previous understanding with others, or in any degree to have been pursuant to advice or direction from others.

Since the evidence fails to show that either Gale or Webster were conspirators, as charged, and no one else is charged and proven to have been a co-conspirator, it follows that, whatever else plaintiff in error may be guilty of, he can not be guilty of the offense of which he is indicted and convicted.

The judgment is reversed and the cause remanded.

*Judgment reversed.*