396    APPELLATE COURTS OF ILLINOIS.

The People of the State of Illinois v. Brown, 159 Ill. App. 396.

---

## The People of the State of Illinois, Defendant in Error, v. M. D. Brown et al., Plaintiffs in Error.

### Gen. No. 15,295.

CRIMINAL LAW—*when verdict set aside.* Notwithstanding the evidence may tend to establish one crime if it does not support the crime charged in the indictment a reversal will be awarded.

Error to the Criminal Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed and remanded. Opinion filed January 6, 1911.

WILLIAM C. PARKER, S. P. DOUTHART, ROBERT P. McNULTA and LASLEY & LASLEY, for plaintiffs in error.

JOHN E. W. WAYMAN, for defendant in error; WILLIAM A. RITTENHOUSE, of counsel.

MR. JUSTICE BALDWIN delivered the opinion of the court.

This is a writ of error bringing before this court for review a judgment of conviction in the Criminal Court of Cook County upon an indictment charging a conspiracy to kill and murder.

The People of the State of Illinois v. Brown, 159 Ill. App. 396.

The indictment, which was returned on the 24th day of April, 1908, contained but one count, and charged that the three defendants, Moses D. Brown, Austin E. Kelley, and Ruth E. Laughlin, otherwise called Ruth E. Barnes, on the 13th day of December, 1907, in the County of Cook, State of Illinois, conspired together to kill and murder one Annie M. Nolain.

A trial was had in August, 1908, resulting in a verdict of guilty as to all three of the defendants, and fixing the punishment of Brown at a fine of $1000, and that of each of the other defendants at imprisonment in the penitentiary.

From the evidence it appears that in November, 1907, Annie M. Nolain, then about sixty or seventy years of age, was residing in her home in Chicago, and that the defendant Brown became her attorney to defend a suit then pending in the Municipal Court; that the defendants Kelley and Ruth E. Barnes then occupied friendly and more or less confidential relations to Brown, the latter being employed in his office as an assistant; that, within a few days after Brown met Miss Nolain, and in the first half of December, 1907, and while Brown was still claiming to be and was acting as the attorney of Miss Nolain, he (Brown), Mrs. Laughlin and Kelley, co-operating together, induced Miss Nolain to make a loan of $400 upon her home, the proceeds of which were turned over to Mrs. Barnes.

It further appears that the defendants had Miss Nolain removed from her home at 1221 West Fifty-ninth street, in the latter part of November, and taken to 295 East Chicago avenue, Chicago, where all three of the defendants were then rooming, and where she was kept for a week or ten days, when Mrs. Barnes took her back to her former home, where she was kept until Christmas day, when, upon complaint made to the city police, she was removed to Saint Bernard's

Hospital, the defendants, particularly Brown, strenuously protesting against and opposing such removal.

On the 13th day of December, 1907, the defendants procured from Miss Nolain a warranty deed, conveying her home to Ruth E. Barnes, the deed reciting a consideration of $5, and purporting to be in further consideration of the care, support and nursing in sickness of Miss Nolain in accordance with an agreement between the parties.

It appeared that Miss Nolain during the entire period was infirm and in a very feeble condition,—being much of the time in a partial stupor induced by her age, ill health and alcoholism, which rendered her partially helpless, and her person and surroundings filthy, and the defendants claimed that they were nursing and caring for her, and giving her medicines in conformity with the directions of reputable physicians.

Numerous errors were assigned to the action of the court below, but, reaching the conclusions we do, it will be necessary to pass upon but one. Is the evidence sufficient to justify the verdict of the jury that the defendants conspired to kill and murder Miss Nolain?

The evidence offered by the State consisted of proof tending to show that the defendants conspired together evidently to secure her property without paying or rendering any adequate equivalent therefor, and that they, or some of them, were administering to Miss Nolain strychnine, morphine and arsenic, ostensibly as medicine, and that they were not supplying her with sufficient food,—but were starving her. But the evidence shows that these drugs were given in very small quantities and in conformity with directions of the physicians, and apparently for a legitimate purpose, considering her condition of health. As to her being starved by the defendants, the evidence is too slight to merit serious discussion. Moreover, if the

object of the defendants was to secure the property of Miss Nolain without rendering any substantial equivalent in the way of caring for her for any length of time, her physical condition indicated but short life, even under favorable conditions, so that there was lacking any adequate inducement to cause her death by their active participation.

If the defendants had been convicted of the conspiracy to cheat and defraud Miss Nolain, and to secure her property without rendering adequate equivalent therefor, and were we asked to review that conviction, a different question would be presented; but in this case we do not find the evidence with reference to the killing sufficient to justify the verdict of the jury.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*