(Nos. 15560-15567.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* OTTO SEEFELDT *et al.* Plaintiffs in Error.

*Opinion filed December 19, 1923.*

1. CRIMINAL LAW—*whether evidence shows conspiracy is question for jury.* The question of what facts are necessary to constitute conspiracy is one of law, but whether there was, in fact, a conspiracy, as shown by the evidence, is a question for the jury.

2. SAME—*what is sufficient to sustain charge of conspiracy in calling strike.* An agreement by members of a labor union to strike or quit work is lawful where the primary purpose is not to injure others but to advance the interests of the workmen, and in a prosecution for conspiracy, evidence, although largely circumstantial, that the defendants, who were officers of a labor union, conspired to call a strike not primarily for the benefit of the workmen but for some purpose of their own, must be held sufficient to sustain the charge, and the express intent to injure the owner or the contractor in charge of the work need not be proved.

3. SAME—*the conspiracy need not be strictly stated or directly proved.* In an indictment for conspiracy the object of the conspiracy need not be stated with the same certainty and strictness as would be required in an indictment in which such matter is charged as a substantive crime, and the proof of the conspiracy need not consist of direct testimony.

4. SAME—*wide latitude is permitted in evidence to prove connection with conspiracy.* In a prosecution of defendants for conspiracy, wide latitude is permitted in introducing facts and circumstances to prove the connection of any one of the defendants with the conspiracy, leaving the jury to pass upon the weight of the evidence, as in the very nature of the crime of conspiracy the connection of two or more persons is a necessary part of the evidence.

WRITS OF ERROR to the Second Division of the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. THOMAS LYNCH, Judge, presiding.

JOHN D. FARRELL, for plaintiff in error Otto Seefeldt.

HOPE THOMPSON, for plaintiff in error William Brims.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

The plaintiffs in error, Otto Seefeldt and William Brims, were convicted in the criminal court of Cook county, where they were tried together as co-defendants, on a charge of conspiracy. The Appellate Court affirmed the judgment, and the cause has been brought here by two writs of error. Separate briefs were originally filed, but the cases have since been consolidated and the opinion will be written in the consolidated case.

The plaintiffs in error were connected with the carpenters' labor union in an official capacity, and in such capacity were instrumental in calling and settling a strike under circumstances which gave rise to the charge of conspiracy for which they were tried. A building was being constructed in the city of Chicago by the Henry Bosch Company, a corporation engaged in the wall paper business, by contractors under plans and specifications under supervising architects. The architects were Mundie & Jensen. William McCumber had a contract for the carpenter work, John McDonald a contract for the millwright work, and there was certain sub-contract work which will be later referred to. Plaintiff in error Brims was president of the Carpen-

ters' District Council, and plaintiff in error Seefeldt was a
business agent of one of the local unions of the District
Council. The carpenter construction work began about Feb-
ruary, 1920, and progressed up to about the time certain
doors were to be hung, when a question arose as to whether
carpenters or ironworkers should hang them. It appears
that a written agreement existed between the District Coun-
cil and the Carpenter Contractors' Association, to which
McCumber belonged, as to the different parts of building
construction which should be considered carpenter work,
and that this agreement in some respects covered the hang-
ing of doors. There were provisions in the agreement as
to strikes, adjustment of grievances, the submission of dis-
putes to a joint conference board, the right of union officials
and representatives to inspect work and other conditions,
and there were other provisions bearing upon the rela-
tionship between contractors and carpenters and with the
unions themselves, some of which are not necessary to be
mentioned here. The architects' specifications required the
installation of certain cross-folding jack-knife doors made
of wood but hinged to metal jambs. The carpenter con-
tractor, McCumber, sub-let a part of his work calling for
such doors to a concern which manufactured them and the
sub-contractor employed ironworkers to install them. When
Seefeldt learned there were many jack-knife doors yet to
come, he requested Louis Busch, one of the carpenters on
the job, to let him know when they came, which the latter
did. Seefeldt then told McCumber that such work belonged
to the carpenters. According to McCumber's testimony he
had an understanding with Seefeldt that if the carpenters
were allowed to apply the hardware to the doors Seefeldt
would permit the ironworkers to do the rest. Seefeldt ad-
mitted this was the understanding, but later said his supe-
riors overruled him and that the hanging of the doors be-
longed to the carpenters and that they had to do it. A few
days afterwards, however, the ironworkers appeared and

began the hanging of the doors, apparently before McCumber was aware of the fact, and as soon as he learned they were there he sent them a special delivery letter to stop, as there was liable to be trouble between them and the carpenters. They refused to stop, and McCumber then arranged for a meeting with Brims and Seefeldt and a representative of the ironworkers, and as neither side would yield, Brims directed Seefeldt to call the strike, which he did, the millwrights quitting at the same time. A meeting was then arranged by McCumber with Brims and Seefeldt at the office of the architects, where they went over the strike situation but reached no solution of the difference. After a talk by Burke, who was spokesman for the architects and carpenter contractor, Brims said, "Is that all you have got us over here for?" Mundie replied that if there was anything implied in the foregoing remark he wished to say that his office had never paid a penny tribute and they never would. Brims then stood up and reached for his hat and said, "If that is all you have to say, let's go," and then went out. McCumber went down the elevator with plaintiffs in error when they left and asked them what would have to be done to get the carpenters back to work, and finally Brims said, "Mr. Seefeldt will call over to your office and see you about it, and I think you can get it settled." Seefeldt went to McCumber's office later, and McCumber asked him what would have to be done to get the men back to work, and Seefeldt replied that the men would have to be paid waiting time, whatever they had lost, and that they would have to have about $400,—perhaps a little more,—what he termed as pay for the amount of time that the ironworkers put in on the job. There was some discussion about this, and Seefeldt said that was the only way it could be settled; they would have to be paid. When McCumber figured that $400 would not, in any event, be the right amount for the ironworkers' time and work but that $225 was the actual amount, Seefeldt said it would be $225,

and McCumber gave him that amount and asked him when the men would be back to work, and Seefeldt told him the next morning, and the carpenters did go back the next morning. Before Seefeldt left, according to McCumber's testimony, he said: "Mac, I don't approve of this sort of thing at all; I don't like it but I have to do it; I am made the goat by the higher-ups," and then charged McCumber that they must keep the matter to themselves. From the testimony offered on behalf of plaintiffs in error there had been previous discussion between McCumber and Brims and Seefeldt as to certain formwork which McCumber had permitted laborers to do instead of carpenters, and it appeared that certain deviations from their agreement had been permitted on one or more previous occasions, and counsel for plaintiff in error argue that when the violation of the agreement as to hanging the doors occurred there was nothing to do but call the strike.

Plaintiffs in error argue there was nothing in what Brims said at the meeting at the architects' office that was not consistent with honesty and that there is nothing in the record to indicate a conspiracy to injure anyone. The question of what facts are necessary to constitute conspiracy is one of law; whether there was, in fact, a conspiracy, as shown by the evidence, was a question for the jury. In *Kemp* v. *Division No. 241,* 255 Ill. 213, this court said that an agreement by members of a labor union to strike or quit work is lawful where the primary purpose is not to injure others but to advance their own interests.

Plaintiffs in error attempt to show a justification for calling the strike because McCumber had previously violated the agreement between the Carpenter Contractors' Association and the District Council, and it is argued that this was done neither as an unlawful act nor in an unlawful manner. It is contended that the testimony as to McCumber giving Seefeldt money did not tend to prove the crime charged and as to Brims was incompetent. In stating the

object of the conspiracy charged, the same certainty and strictness are not required as would be required in an indictment in which such matter was charged as a substantive crime. (5 Standard Ency. of Procedure, 291.) The proof of the conspiracy need not consist of direct testimony. *Burnham* v. *Roth*, 244 Ill. 344; Underhill on Crim. Evidence, (3d ed.) sec. 716; Abbott's Proof of Facts, (4th ed.) 417.

The different counts of the indictment alleged that the fraud or injury was against the property or business of the Henry Bosch Company, and it is contended that the proof fails to show any conspiracy against that company. In different parts of the testimony this was called "the Bosch job," and Seefeldt had been looking at the plans and knew previously that the jack-knife doors were to come and found out when they were to come. The plaintiffs in error did not offer any testimony to show that they did not know for whom the building was being constructed. We think there was sufficient testimony introduced to justify the jury in believing that both plaintiffs in error knew for whom the building was being constructed. If the purpose of calling the strike had been for the benefit of the union and its members, one of the first things which doubtless would have been shown by plaintiffs in error would be that the $225 collected from McCumber was used in some legitimate connection with the union or its members. There was no such showing made, but, on the contrary, there was evidence tending to show that none of the $225 was paid to the workmen, although they were paid by McCumber on account of the time they lost and the amount was charged up to the Bosch Company. In the absence of any showing that the primary object in calling the strike was for the benefit of the union or its members, the testimony, though it be largely circumstantial, to the effect that the strike was called in pursuance of the conspiracy charged must be held to be sufficient. According to the agreement between the

District Council and the Carpenter Contractors' Association no strike should be called without the sanction of the joint conference board. It was also provided that the officials of the union might interview the men at work but should not hinder the progress of the work. The question was not submitted to the joint conference board. When the plaintiffs in error called the strike they knew they were not complying with the agreement or were going contrary to it and knew the consequences of their action as to injury and interfering with the progress of the work. The fact that the strike first affected McCumber, or that the money first came from him, did not lessen the effect of such acts as against the Bosch Company. The carpenter contractor was simply conducting the work. The owner was interested in having the building completed for use in its business, and while the practical injury might be more in one case than in another, the degree of injury did not add to or take away from the unlawful character of the act of calling the strike. The express intention need not be proved. (*People* v. *Yuskauskas*, 268 Ill. 328.) In *People* v. *Crenshaw*, 298 Ill. 412, we held that one accused of a crime is presumed to have intended the reasonable and probable consequences of his act.

There is an attempt to distinguish as to Brims' part in calling the strike and an attempt to show that he did not receive any of the money or even know that it was paid. It is true, there is no direct evidence that Brims received money, but, as stated in Underhill on Criminal Evidence, (3d ed. sec. 716,) "great latitude is allowed the trial judge in the admission of circumstantial evidence, as the conspiracy often can be shown only by isolated facts and inferences drawn therefrom." Taking different acts of Brims singly and without any connection with the whole of his conduct, many of his acts were undoubtedly consistent with an honest participation in the conduct of the strike, but all his acts and statements were proper to be taken into consideration in determining whether he was, in fact, taking part

in a conspiracy. McCumber testified that when he asked Brims what would have to be done to put the men back to work, Brims said: "Mr. Seefeldt will call over to your office and see you about it, and I think you can get it settled." Brims testified that he said: "All that I can say to you is that I am tired and disgusted; you have been violating this agreement right along; the minute you get the ironworkers off this job Mr. Seefeldt will put your men back to work; this job is in his hands from now on." It was the jury's province to pass upon the weight of this disputed testimony. According to McCumber's testimony Seefeldt had twice told him that what he did was necessitated because of his superiors' instructions,—once when there was a discussion as to allowing the ironworkers to hang the doors if the carpenters applied the hardware, and again when he said he did not approve of what was done when the $225 was collected, saying: "I don't like it but I have to do it; I am made the goat by the higher-ups."

We think the question of variance was raised in the trial court, but we do not agree with counsel for plaintiffs in error in their argument that McCumber's testimony relative to giving money to Seefeldt did not tend to prove the crime charged and was incompetent as to Brims. "It need not be shown that the parties actually came together and agreed in express terms to enter into and pursue a common design. The existence of the assent of minds which is involved in a conspiracy may be, and from the secrecy of the crime usually must be, inferred by the jury from proof of facts and circumstances which, taken together, apparently indicate that they are merely parts of some complete whole." (Underhill on Crim. Evidence,—3d ed.—sec. 717.) In the very nature of the crime of conspiracy the connection of two or more persons is a necessary part of the evidence, while in the proof of some other substantive crime such connection need not be shown. The testimony relative to

giving the $225 was admissible to prove the motive and was material as to both Seefeldt and Brims. Another significant fact testified to is that the ironworkers afterward were permitted to do some of the work which was the cause of the strike but without any jurisdictional question being raised. This, with the fact that the $225 was not paid to the men who were called on to strike, tends to discredit the contention that the strike was brought to benefit the union or the men. The men would not be helped either by the financial penalty imposed or by the establishment of a principle,—that is, by not permitting what was considered carpenter work to be done by ironworkers,—since they afterward did permit the ironworkers to finish work which had previously been the occasion of the strike.

Complaint is made by counsel for plaintiffs in error of certain instructions. While some of these instructions complained of may not have been as correctly worded as they might have been and might not be consistent with some of the things said by this court in other cases where instructions involving similar questions have been criticised, we do not think reversible error was committed in the giving of any of these instructions. As we understand the briefs and abstracts in this case, some forty instructions were given by each party, both the State and the plaintiffs in error, in this case, and it would be very difficult to keep from stating some things in the numerous instructions that counsel could not criticise as being faulty. We have given all these instructions consideration and do not think they misled the jury improperly as to the case.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*