(No. 24607.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLEMENT AMORE *et al.* Plaintiffs in Error.

*Opinion filed June 20, 1938—Rehearing denied October 5, 1938.*

246

THOMAS MARSHALL, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

Edni Sulli, Dorothy Berger, Rose Amore, Nancy Delmonico, Kate Paldo, Barney Siegel, John Zittello, Sanders Caravello and Clement Amore, were found guilty of conspiracy to violate the election laws by a jury in the criminal court of Cook county. Written motions for a new trial and in arrest of judgment were made and overruled. Clement Amore, Siegel, Caravello, Zittello and Berger were sentenced to serve a term of not less than one nor more than five years in the Illinois penitentiary; Sulli, Delmonico, Paldo and Rose Amore were each ordered to pay a fine of $200. Their conviction was sustained by the Appellate Court and the cause is here by writ of error for review.

The indictment in this case charged defendants with conspiracy and concluded with the phrase "contrary to law." Because conspiracy to violate election laws was not a crime

at common law, defendants claim the indictment should have concluded "contrary to statute" and thus is fatally defective. Sections 45 and 46 of the Criminal Code (Ill. Rev. Stat. 1937, chap. 38, pars. 138-139) do not explicitly embrace conspiracy to violate the provisions of the Primary Election statute. But every conspiracy to do an unlawful act or to do a lawful act for an illegal, fraudulent, malicious or corrupt purpose or for a purpose which has a tendency to prejudice the public in general is, at common law, an indictable offense. (*Smith* v. *People*, 25 Ill. 9; *Chicago, Wilmington and Vermilion Coal Co.* v. *People*, 214 id. 421; *People* v. *Curran*, 286 id. 302.) If an act is an offense both against the common law and the statute, the prosecutor may proceed under either. (*Chicago, Wilmington and Vermilion Coal Co.* v. *People, supra; People* v. *Curran, supra.*) The indictment is not vulnerable to the attack made upon it.

Certain instructions given by the court are claimed to be repugnant and contradictory to each other. In the written motion for a new trial, specific grounds of alleged errors were enumerated, but no complaint was made nor any error charged relative to any instruction, either given or refused. A written motion for new trial, assigning specific reasons in support of it, limits the party making it to the grounds therein urged. All other errors are deemed waived and will not be considered on review. (*People* v. *Hatcher*, 334 Ill. 526; *People* v. *Fox*, 346 id. 374.) A contrary holding would deprive the trial court of an opportunity to correct its own errors, if any. For the same reason, the complaint that the judgments were discriminatory,—*i. e.*, the acquittal of one, fines for four and penitentiary sentences for the other five on the same testimony,—can not be considered by this court.

The jury fixed the punishment of Dorothy Berger at imprisonment in the penitentiary, while the court sentenced her to the State Reformatory for Women. She claims that the verdict and sentence do not agree and are, therefore,

void as to her, and further, that the verdict fixing her punishment in the penitentiary is void and no judgment can be based upon a void verdict. The legislature has provided that "any female person hereafter convicted of any offense punishable by imprisonment in the penitentiary and sentenced to imprisonment shall be committed, by the court in which the conviction is had, to the State Reformatory for Women." (Ill. Rev. Stat. 1937, chap. 23, par. 251; see, also, chap. 38, par. 803.) It seems clear from this provision that the term "State Reformatory for Women" as used therein means a prison of the class or grade of a penitentiary. We said in *People* v. *Gawlick,* 350 Ill. 359, "Since the enactment of the statute providing for the State Reformatory for Women, * * * any female person convicted of an offense punishable by imprisonment in the penitentiary is required to be committed to the State Reformatory for Women." The objection is without merit.

The principal claim of defendants is that there was no evidence of anything done by them pursuant to a mutual agreement, no proof that they acted with unity of design and purpose and no credible evidence of their guilt. Their conviction rests principally upon the testimony of witnesses, Haythorne and Hill, students of the University of Chicago. They were watchers at the election in question, and were employed and paid by a detective agency representing a civic organization. They both testified that when a voter called for a ballot and asked for assistance, Dorothy Berger or Rose Amore went to the booth, marked the ballot, brought it out and handed it to the voter who deposited it in the ballot box; that no other official ever went with Dorothy or Rose to the voting booth on these occasions and that, in many cases, the voter was not asked to and did not make the requisite affidavit. Both testified that Clement Amore, husband of Rose, voted twice, once early in the morning and again about mid-afternoon, and Hill said that, prior to his voting the second time, Amore whispered some-

thing to the clerks before getting his ballot. Both witnesses identified Zittello and stated he came to them late in the afternoon saying he had a certain number of votes to get through, that it was getting late and asked if he could rush a few through in a hurry, remarking that the board was afraid to do anything because of these witnesses, but if he was permitted to do so, it would mean a few dollars to them. When they did not accede to this request, Zittello turned to the board and said, "Well, let's let the whole thing drop." These witnesses also testified that when the polls closed at 5:00 o'clock they each examined the poll-books and noted that the last name appearing there was that of Mary Sasso in line 473, and Haythorne remembered her as the last voter; that no more votes were cast thereafter. Hill noticed the clerks Paldo and Delmonico writing in the poll-books after the polls closed. About midnight, both witnesses again looked at the poll-books and observed that additional names had been added, the last line then being 511. Haythorne and Hill further stated that Zittello and Clement Amore took part in handling, counting and tallying ballots and that Herman Sulli, husband of Edni Sulli, one of the election judges, together with defendant Barney Siegel, handled other ballots. Hill saw Caravello sitting next to Herman Sulli marking crosses with a pencil in the square opposite the name of a candidate, Carmen Vacco.

Haythorne testified that after the ballots were divided in piles, Zittello and Clement Amore called off the ballots; that Amore handled the ballots, would call off the names of about four or five, but not all the names on the ballot, and then lay it aside and take up another ballot; that he observed Amore frequently making crosses with a pencil in blanks for several candidates and heard him say, "It isn't very close anyway. This candidate will win anyway but I would like to give him a few more votes because I am working for him and it will make him feel good if he gets more votes." Late in the evening, Caravello remarked,

"Why doesn't my candidate Vacco get more votes?" and Siegel answered, saying, "Pipe down. We have our orders. You are included. Keep quiet."

At least twenty-three witnesses whose names appear on the poll-books as having voted at the election testified that, although they were registered voters in that precinct, they did not vote at the election in question. Four witnesses said they asked for assistance but that only one judge accompanied them to the booth. Rudolph B. Salman, a handwriting expert, testified he made an examination of over five hundred ballots in question, and pointed out numerous irregularities.

Each of the defendants testified in his own behalf that he did not make entries in the poll-books of any voter who had not voted and did not make a false return of the results and was not a party to any agreement to violate the election laws of this State. All testified that no one except the judges handled the ballots and virtually denied all irregularities testified to by Haythorne and Hill. The explanation given by the members of the board relative to the additional names on the poll-books was that Mrs. Paldo, a clerk, went into a private room about 4:30 to nurse her baby which had been brought to her; that during the interim Edni Sulli took over her duties and by mistake entered the names of the incoming voters in the 1935 instead of the 1936 poll-book; that when the polls closed, the error was discovered and then corrected by taking the book used by clerk Delmonico and copying therefrom into the 1936 book the names of those voting subsequent to Mary Sasso. Three witnesses testified for defendants that two judges went into the booth while they were being assisted in voting.

Defendants rely on *People* v. *Bain,* 359 Ill. 455, where we stated, "the prosecution was required to prove, beyond a reasonable doubt, * * * that such attempts were the result of the union of the wills and a concert of action for that purpose on the part of the defendants. * * * The vari-

ous transactions were independent and separable. * * * Even if it be conceded that the defendants individually performed questionable or illegal acts, unless these acts were pursuant to a mutual agreement, the concession cannot avail the prosecution." While this language is a correct statement of the conspiracy law, it was used in a situation much different from that shown by the proof in this case. Defendants argue that the failure of the jury to convict Herman Sulli, who called off ballots, demonstrates the absence of any common scheme or confederacy. This, alone, is no evidence of a lack of common purpose. Rarely can positive proof be made of the actual planning of a conspiracy; ordinarily such proof must be established by individual acts indicative of a common design. It is not necessary in the trial of a conspiracy case to prove the defendants actually conferred together and there reached an agreement for a concert of action in achieving a common unlawful purpose. It is enough to establish that their individual and separate acts were in furtherance of the same corrupt objective. (*People* v. *Fedele*, 366 Ill. 618.) The testimony of Haythorne and Hill concerning the conduct of defendants is corroborated by the testimony of the handwriting expert Salman, and that of the many witnesses who did not vote although the poll-books indicated that they did. This evidence was sufficient to warrant the jury in believing that the defendants were participants in a common design to achieve a fraudulent end. The jury observed the witnesses and also heard them testify. It was in a position to form an opinion as to the veracity of their testimony. We will not disturb the verdict of the jury unless it is contrary to the weight of the evidence or the result of passion or prejudice. (*People* v. *Kelley*, 367 Ill. 318.) A review of the evidence fails to reveal any such ground in the present case.

The judgment is affirmed. *Judgment affirmed.*