THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDREW McCHRISTIAN, Defendant-Appellant.

(No. 58436;

First District (2nd Division)—February 19, 1974.

DOWNING, J., dissenting.

James D. Montgomery, of Chicago (David Lowell Slader, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (James S. Veldman and Thomas G. White, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

A jury found defendant Andrew McChristian guilty of conspiracy to murder five persons. He was sentenced to serve seven to fourteen years. In urging us to reverse his conviction, he presents four issues for our review. However, we will review only one because, in our judgment, its resolution is dispositive of this appeal. The issue is whether the evidence proved, beyond a reasonable doubt, that defendant was guilty of the conspiracy charged in the indictment.

## I.

On May 8, 1968, at about 9:30 P.M., near the intersection of East 65th Street and University Avenue in Chicago, three plain-clothes policemen stopped an automobile driven by David Barksdale, a youth who was known by the policemen as the leader of the Disciples, a street gang. In the automobile with Barksdale were four young men, William Gaddy, James Hall, Tyrone Withers and Mitchell Newton. The officers, who were members of the Chicago Police Gang Intelligence Unit, searched the five, found no weapons, said a few words to them and then released the youths. Barksdale drove on and the three policemen, in an unmarked car, followed him, approximately three car lengths behind.

After a number of turns in and out of several streets, Barksdale entered Ellis Avenue at East 66th Street and proceeded north. When he was at or near 6526 South Ellis, he slowed down, stopped and raced the motor of his automobile. At the time, but without knowing that Barksdale and his companions were coming there, defendant and Melvin Bailey were at or near 6526 South Ellis. They knew each other; in fact, they were members of the Blackstone Rangers, a youth gang that was a rival of the Disciples. They knew Barksdale, could recognize his car when they saw it; and on the evening in question, had arrived at 6526 South Ellis together. A short time before Barksdale drove up, defendant heard someone shout, "* * * here comes David!"

At about that moment, from the west side of Ellis Avenue, as they later testified, the three policemen heard someone shout, "D's!" They saw a number of youths on both sides of the street. They heard a shot. After a pause, several shots rang out from both sides of Ellis Avenue. One officer saw "* * * about ten or thirteen people firing [guns]." Two of the officers saw a young man run in front of their car and fire a gun four or five times directly at Barksdale's automobile. It was Melvin Bailey. The officers pursued him; and, while being chased, he threw

away a .45-caliber gun that was recovered by the officers a moment or so before they arrested him.

While Bailey was being taken into custody, the third policeman saw a young man point a gun and fire it once at Barksdale's automobile. At the same time, that officer saw two other youths firing at Barksdale's car. The youth who was alone ran into a gangway and then to a porch, followed by the policeman. The youth ducked; and a short time later the policeman, using his flashlight, found him trying to unjam a .25-caliber automatic gun. He was the defendant, Andrew McChristian. On being ordered to do so, defendant dropped the gun and was placed under arrest. No one, either in or out of Barksdale's automobile was injured; no property was damaged.

A short time later, as defendant and Bailey were being put in the police car, Edward Dinkins approached the officers and asked why the two were being held. Dinkins was arrested. Barksdale, who had driven to the corner of East 65th Street and Ellis Avenue, stopped his car there and was asked by the three policemen to go with them to an area police station where they were taking defendant, Bailey and Dinkins. At the station, according to one policeman, Bailey and defendant had a conversation with Barksdale. Bailey said to Barksdale, "We didn't get you this time." Defendant, who was listening to the conversation, chuckled and said, "We will get him next time."

Defendant, Bailey and Dinkins were later indicted; and in fifteen counts, it was charged that on May 8, 1968, they committed aggravated assaults, aggravated batteries and attempts to murder David Barksdale, William Gaddy, James Hall, Tyrone Withers and Mitchell Newton. The sixteenth count charged the defendants with conspiracy to murder Barksdale and his four companions. Prior to their trial, on the State's motion, the ten counts that charged the aggravated assaults and aggravated batteries were dismissed. The defendants then went to trial before a jury on the six counts that charged the attempts to murder and conspiracy. The three policemen testified to the events of May 8, 1968. At the close of the State's evidence, the trial court directed the jury to acquit Dinkins of all the charges against him. Defendant, testifying as one of two defense witnesses, denied that in the evening of May 8, 1968, he discharged any firearm in the direction of Barksdale's car or conspired with Bailey to do so. The remaining cases were submitted to the jury, and it returned verdicts finding Bailey guilty of the attempts to murder and the conspiracy.

Defendant was acquitted of the attempts but was found guilty of conspiracy under the charge that on May 8, 1968, he, Bailey and Dinkins "* * * with the intent to commit the offense of murder, knowingly

and intentionally agreed with each other and with divers other persons whose names are unknown to the Grand Jurors but who the said Grand Jurors believed to be members of an organization known as the Blackstone Rangers, to the commission of the offense of murder, that is to say, they knowingly and intentionally agreed to kill by shooting without lawful justification David Barksdale, William Gaddy, James Hall, Tyrone Withers and Mitchell Newton." In furtherance of the conspiracy, it was charged that on May 8, 1968, defendant and the two others intentionally discharged firearms in the direction of an automobile in which Barksdale, Gaddy, Hall, Withers and Newton were riding, with intent to kill or do great bodily harm to the occupants of the automobile. Therefore, in view of the specificity of the charge, the question we must decide is whether evidence which disclosed the facts in this record proved that on May 8, 1968, defendant, Bailey and Dinkins conspired to murder the five persons whose murder was the object of the alleged conspiracy.

## II.

■■ The offense with which defendant, Bailey and Dinkins were charged in the conspiracy count was a specific intent crime. (See Ill. Rev. Stat. 1967, ch. 38, par. 8—2; Perkins, Criminal Law 629 (2d ed. 1969); Harno, *Intent in Criminal Conspiracy*, 89 U. Pa. L. Rev. 624, 635 (1941).) The gist of that crime was the unlawful combination or agreement; one into which, according to the State, the three defendants had entered with intent to murder David Barksdale and the four named companions who were in his automobile on the evening of May 8, 1968. See *People v. Borrelli*, 392 Ill. 481, 64 N.E.2d 719; *People v. Edwards*, 74 Ill.App.2d 225, 219 N.E.2d 382.

■■ To sustain a conviction for conspiracy, the object of the conspiracy has to be proved as laid out in the indictment. (*Evans v. People*, 90 Ill. 384; *Johnson v. People*, 124 Ill.App. 213.) In this case, since the object of the conspiracy, according to the charge, was the murder of five named persons, the State had to prove that when defendant and Bailey fired guns in the direction of the automobile in which the five were riding, they did so with knowledge that the purported victims were in there. Compare *People v. Seefeldt*, 310 Ill. 441, 141 N.E. 829; see *United States v. Allegretti* (7th Cir. 1964), 340 F.2d 243.

■■ An attempt to murder requires proof of specific intent to take human life. (*People v. Davis*, 6 Ill.App.3d 622, 286 N.E.2d 8.) For example, in a charge of conspiracy to mutilate the face of a named person, the State must prove that it was the face of the named person which the conspirators intended to mutilate, not that of someone else. (*State*

*v. Vetrano* (Me. 1922), 117 A. 460.) And where it is charged that a bulb of sulphuric acid was thrown into a cab with intent to maim a named individual who was seated in the rear seat of the cab, the State must prove that the defendants knew that the intended victim was in the cab. (*State v. Martin* (1938), 342 Mo. 1089, 119 S.W.2d 298.) Therefore, in a case like this one, the State had to prove not only that the defendants knew David Barksdale, could recognize his automobile and shot at him the evening of May 8, 1968; it had to prove the defendants, as conspirators, had knowledge of Barksdale's four companions and shot at Barksdale's automobile with intent to murder them. (Compare *United States v. Ausmeier* (2d Cir. 1945), 152 F.2d 349; see *People v. Hodson,* 406 Ill. 328, 94 N.E.2d 166; *People v. Niederhauser,* 258 Ill.App. 564; *Wilson v. State* (1934), 127 Tex. Crim. 152, 74 S.W.2d 1020; *State v. Hicks* (1950), 233 N.C. 31, 62 S.E.2d 497.) A conspiracy against a number of individuals must be proved by evidence which shows that the conspiracy was against all as charged; a conspiracy against a single person cannot be sustained by proof of a conspiracy against the public generally. *People v. Walsh,* 322 Ill. 195, 207, 153 N.E. 357; see *Lowell v. People,* 229 Ill. 227, 82 N.E. 226, 15A C.J.S. Conspiracy § 90.

■■ With these principles in mind, we examine the evidence on which the jury found defendant guilty of conspiracy and which the State contends supports the judgment of conviction. We observe that this record does not show any of the defendants, at any time prior to May 8, 1968, knew that David Barksdale was going to drive his automobile past 6526 South Ellis Avenue with William Gaddy, James Hall, Tyrone Withers and Mitchell Newton as his companions. There is no evidence that defendant, at any time, agreed with Bailey and Dinkins to discharge firearms in the direction of Barksdale's automobile with intent to murder the persons who were objects of the conspiracy. It is true that to prove a conspiracy evidence of an express agreement is not necessary. (*People v. Amore,* 369 Ill. 245, 16 N.E.2d 720; *People v. Williams,* 324 Ill.App. 526, 58 N.E.2d 278.) A conspiracy is rarely susceptible of proof by direct evidence. (See *People v. Edwards,* 74 Ill.App.2d 225, 219 N.E.2d 382; 15A C.J.S. Conspiracy § 93(1).) Therefore, a conspiracy can be proved by direct evidence that discloses a common design by two or more persons. (*People v. Meisenhelter,* 381 Ill. 378, 45 N.E.2d 678.) Or it can be proved by circumstantial evidence. (*People v. Link,* 365 Ill. 266, 6 N.E.2d 201; *People v. Bain,* 359 Ill. 455, 195 N.E. 42.) However, circumstantial evidence that will support a conviction for conspiracy, as is true of circumstantial evidence generally, must be such that the conclusion drawn from it excludes every reasonable hypothesis other than guilt. (*People v. Nathanson,* 389 Ill. 311, 317, 59 N.E.2d 677;

*Nestor Johnson Manufacturing Co. v. Goldblatt,* 265 Ill.App. 188.) It has been said that a conspiracy cannot be proved by mere suspicion, mere relationship of the defendants or association of the parties charged. *People v. Mulford,* 385 Ill. 48, 54, 52 N.E.2d 149; *People v. Gates,* 29 Ill.2d 586, 195 N.E.2d 161.

In this case, evidence of the alleged conspiracy consisted of proof that defendant and Bailey knew each other, were members of the same street gang, arrived together at 6526 South Ellis Avenue on the evening of May 8, 1968, were seen by three policemen (defendant firing a gun once and Bailey four or five times at Barksdale's automobile); and later, in a conversation with Barksdale, spoke of having missed him when they fired their guns. In our judgment, the statements did not admit a conspiracy to murder Barksdale and his four companions. At most, they expressed ill will toward Barksdale.

In determining whether the evidence proved that defendant and Bailey intended to murder five persons when they discharged firearms in the direction of Barksdale's automobile, it is significant that, according to the three policemen, as many as 13 people were seen firing guns, two youths were seen firing a weapon, defendant fired once and Bailey four or five times directly at the car; yet, when the automobile was examined, there were no bullet holes on it; when a picture of it was shown to an evidence technician of the Chicago Police Department, he could not tell what caused an indentation that could be seen on its roof.

As to defendant's conduct, according to one of three policemen, he was seen firing a gun at Barksdale's automobile. This firing, by the State's theory, was defendant's overt act in furtherance of the conspiracy; it was also, by that theory, defendant's attempt to murder Barksdale, Gaddy, Withers, Hall and Newton. The jury, however, considered the charges of attempts to murder and found defendant not guilty. The jury could have found defendant guilty on the grounds that he was accountable for Bailey's conduct in firing four or five times at the automobile, but it did not. There is no other evidence of any other act by the defendant. The crimes which the State charged were factually intertwined, and since each crime was covered by a separate count of the indictment, there is a logical inconsistency in the verdicts: five acquitted defendant of attempts to murder, one found him guilty of conspiracy to murder the same five persons. (See *People v. Hyman,* 8 Ill.App.3d 382, 290 N.E.2d 627.) This does not make the verdicts legally inconsistent. (*People v. Hairston,* 46 Ill.2d 348, 263 N.E.2d 840.) However, this inconsistency tends to negate the existence of an element essential to proof of the crime of which defendant was convicted. (See *Ex Parte Johnston* (1935), 3 Cal.2d 32, 43 P.2d 541; *People v. Guerrero* (1943), 22 Cal.2d 183, 137

P.2d 21; Annot., 18 A.L.R.3d 259.) That element, on the peculiar facts of this case, is the overt act of shooting which by its verdicts of acquittal the jury must have found defendant did not commit with intent to murder the five occupants of the automobile.

■■ In *People v. Henry*, 3 Ill.App.3d 235, 278 N.E.2d 547, the defendant was charged with the attempt to murder a Chicago policeman who, in the company of three fellow officers, was riding in an unmarked squad car. There was evidence that defendant pointed his arm at the police car and fired two shots in its direction. He was seen throwing away a revolver that was recovered together with three live and two expended cartridges. On the defendant's person was a holster; in his pocket were twelve live and three spent shells. The defendant in *Henry* admitted that the gun was his but said that he shot in the air and not at the police car. This court, speaking by Mr. Justice Dempsey, held that the State's evidence did not prove the defendant fired the gun at the squad car with intent to murder the policeman named in the indictment as the victim of the shooting. Although in this case we review a conviction for conspiracy rather than one for attempt to murder, we reach the same conclusion. In doing so, we do not condone defendant's conduct nor that of Bailey. The evidence, in our judgment, proved that on the evening of May 8, 1968, according to three policemen whose testimony the jury chose to believe, defendant and Bailey acted in concert to endanger public safety and health by discharging firearms in one of the most densely populated areas of Chicago. However, the conviction for conspiracy in this case cannot be sustained by evidence that the defendants were guilty of some other charge or of generally bad and criminal conduct; the evidence must prove their guilt of the particular charge made in the indictment. (*People v. Mader*, 313 Ill. 277, 285, 145 N.E. 137; *People v. Bain*, 359 Ill. 455, 195 N.E. 42; compare *People v. Brown*, 159 Ill.App. 396.) Heinous as was their conduct, the evidence in this record did not prove a conspiracy to murder five persons, as was charged by the State. (Compare *Commonwealth v. Faulcon* (1973), 450 Pa. 414, 301 A.2d 375.) Therefore, the judgment is reversed. *People v. Lamkin*, 9 Ill.App.3d 771, 291 N.E.2d 512.

Reversed.

HAYES, P. J., concurs.

Mr. JUSTICE DOWNING dissenting:

I would reverse and remand.

Defendant McChristian with co-defendants Melvin Bailey and Edward Dinkins were charged in a sixteen count indictment with aggravated assault, aggravated battery, attempts to murder and a conspiracy to

murder five persons. At the close of the State's case, the trial court granted Dinkins' motion for a directed verdict. The jury returned verdicts acquitting McChristian of the attempts to murder but found him guilty of the conspiracy charged. Bailey was found guilty, by the jury, on five counts of attempt murder and conspiracy.

We have today reversed and remanded the conviction of Bailey. (*People v. Bailey*, 18 Ill.App.3d 80, —— N.E.2d ——.) The reasons for the reversal of *Bailey* arose from certain trial errors. The same errors are equally applicable to McChristian. For the reasons set forth in *Bailey*, I would reverse and remand the McChristian conviction.

The majority concluded that as to McChristian the record does not prove a conspiracy to murder five persons as charged by the State. Therefore, the majority only reverses.

In this connection, it is interesting to note that before this court, McChristian, in requesting this court to *reverse and remand*, never really argued the theory upon which the majority bases the reversal. Naturally, the State did not have an opportunity to present its arguments as to this theory. Our review of the record indicates the trial court denied defendant McChristian's motion for new trial; however, we cannot tell from the record whether the motion for new trial was written or oral (see Ill. Rev. Stat. 1969, ch. 38, par. 116—1(b) and (c)), and whether this theory was presented to the trial court. Under these circumstances, at this time, I cannot concur in the majority opinion.

As stated in the *Bailey* opinion, there were certain errors in the trial court with respect to the testimony of witness David Barksdale and the efforts to impeach his testimony. Exclusive of the Barksdale testimony, my review of the evidence as to McChristian indicates there was evidence in the record, from which the jury may imply the existence of a conspiracy on the part of McChristian and Bailey to commit the acts as charged in the indictment.

The majority opinion, in discussing the jury verdicts as to McChristian, points out their inconsistency. As our supreme court said in *People v. Hairston* (1970), 46 Ill.2d 348, 362, 263 N.E.2d 840, "* * * our courts have followed the view that logical consistency in verdicts in such instances is not necessary, so long as the verdicts are not legally inconsistent. (*People v. Raddatz*, 403 Ill. 48; *People v. Taylor*, 56 Ill.App.2d 170; *People v. Ingersoll*, 58 Ill.App.2d 216; and see *People v. Garman*, 411 Ill. 279.) To use the words of the court in *State v. Baird* (Wash.), 93 P.2d 409, 412, we follow the view that: 'In law there is no inconsistency in verdicts of acquittal and conviction upon charges of crimes composed of different elements, but arising out of the same state of facts.' The

verdicts here were legally consistent, if not logically so, and defendant's claim of a right to discharge must be denied."

In *People v. Lamkin* (1972), 9 Ill.App.3d 771, 291 N.E.2d 512, cited by the majority, the defendant was charged with conspiracy to commit burglary. The only evidence implicating the defendant in the burglary was the testimony of one of the arresting officers. The court denied defendant's motion for a directed verdict. The defendant offered no evidence at trial. The court reversed the conviction because on the record there was reasonable doubt of defendant's guilt. On the other hand, McChristian testified at his trial, and under long established principles he waived any error. *People v. Slaughter* (1963), 29 Ill.2d 384, 389, 194 N.E.2d 193.

For these reasons, I would reverse the judgment of the circuit court of Cook County and remand for a new trial.