THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEON McVET, Defendant-Appellant.

(No. 70-63;

Second District—September 11, 1972.

Morton Zwick, of Defender Project, of Chicago, (Ralph Ruebner and Paul Bradley, of counsel,) for appellant.

Jack Hoogasian, State's Attorney, of Waukegan, for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

A two count indictment charged the defendant with the offenses of armed robbery and robbery. Tried by a jury, he was found guilty of the later offense, his petition for probation denied and he was sentenced to the penitentiary for a term of four to ten years.

On appeal, defendant contends: 1) the evidence was not sufficient to sustain the judgment of conviction; 2) he was denied effective assistance of counsel; 3) the court encouraged a compromise verdict; 4) he was denied a fair trial by prejudicial cross-examination; 5) the court erred in forcing him to take a lie detector test and in denying probation on the results of the examination.

In the early morning hours of February 21, 1969, a car with five occupants drove into a gas station in Lake County. As attendant Roger Prince approached the car, the front seat passenger (alleged to be McVet) got out, asked where the washroom was, and was directed by the attendant. Prince was instructed by the driver (Foucher) to fill the tank and, while so engaged, Prince noted the car's license number. As he returned to the station to get a cloth, Foucher came up to the attendant, put a gun to his abdomen and led him into the restroom where they were joined by the passenger who had first gotten out of the car. Prince was told to stand with his hands against the wall, feet spread; he was frisked and robbed by the pair. The two left the restroom for a short period during which, Prince testified, he could hear noises in the office. Returning to the restroom, they harassed Prince as to the amount of money he had, and one, Prince testified, threatened to shoot him. Directing that Prince should not come out, the two left the room. About ten minutes later, the attendant emerged from the restroom, found the car and its occupants gone and the office of the station ransacked.

Prince ran to the gas station across the street, the police were called and when they arrived, Prince related the occurrence. A bulletin describing the car and its occupants was broadcast and, within a short time, the car and occupants were apprehended in a gas station in Kenosha County, Wisconsin. The police escorted Prince to that station where he identified the car and its occupants.

Only two of the five occupants (defendant and one O'Connor) were brought to trial, Foucher and the other two not being amenable to the court's jurisdiction. At trial, Roger Prince, principal witness for the State, identified defendant as the passenger who assisted Foucher with the robbery. Prince was unable to identify O'Connor, although other evidence established that the latter had been a passenger in the back seat of the car. Both defendants testified, corroborating each other, that all parties in the car had met in Chicago on the night of the robbery, that they had been on their way to take entrance examinations at a university in Wisconsin, that they had been asleep in the back seat of the car during the ride, that they had not discussed any possibility of a robbery, and that they had in no way participated in robbing Prince or the gas station. The only substantial difference in the testimony of the two defendants was that, while McVet testified he awoke during the robbery but pretended to be still asleep, the other defendant testified he was asleep throughout. The jury found McVet guilty and O'Connor, not guilty.
*Contentions on appeal:*
*1. The evidence was not sufficient to sustain a judgment of conviction.*
Defendant contends that since he and O'Connor testified to their both having been in the back seat of the car throughout the occurrence, the

conviction rests solely on the uncorroborated identification of the gas station attendant. Defendant asserts that the guilty finding cannot be supported by this allegedly vague, uncertain and thoroughly impeached testimony, pointing to the fact that, at trial, the defense introduced Prince's preliminary hearing testimony in which he appeared somewhat uncertain in his identification of defendant as the front seat passenger who, with the driver, robbed him.

■■■ The law is well settled that the uncorroborated identification of a defendant by a single witness, including the complaining witness, is sufficient to convict if the testimony is positive and the witness credible, although contradicted by the accused. *People v. Clarke,* 50 Ill.2d 104, 110 (1971); *People v. Gipson,* 29 Ill.2d 336, 341 (1963); *People v. Guido,* 25 Ill.2d 204, 208-209 (1962); *People v. Day,* 2 Ill.App.3d 811, 812 (1972). In the instant case, the evidence shows that the gas station was well lit, that Prince had opportunity to see the front seat passenger when he first got out of the car and, again, on the way into the washroom, and that Prince's in-court identification of defendant (as the passenger) was positive. Prince's preliminary hearing testimony did indicate that he only got a glance at the passenger when the latter alighted from the car and that he "guessed" defendant was the passenger. However, at the same hearing, Prince testified that he knew what the passenger looked like and got a good look at him when first approached by him. The somewhat contradictory evidence created an issue of the credibility of the witness. *People v. Jordan,* 5 Ill.App.3d 7, 12, 282 N.E.2d 530, 535 (1972). The credibility of the witness and the weight to be given his testimony were questions for the jury and its determination will not be upset on review. *People v. Elmore,* 50 Ill.2d 10, 13 (1971); *People v. Day, supra* at 813. A conviction will be overturned when identification of a defendant is doubtful, vague and uncertain. It will be affirmed where, as here, the determination of the jury is based on adequate evidence and a proper consideration of credibility, establishing defendant's guilt beyond a reasonable doubt. *People v. Davis,* 126 Ill.App.2d 255, 264 (1970); *People v. Price,* 96 Ill.App.2d 86, 93-94 (1968).

2. *Defendant contends he was denied effective assistance of counsel in two respects.*

■■ To prove inadequacy of representation, defendant must establish: "1) actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney; (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different." *People v. Stepheny,* 46 Ill.2d 153, 157 (1970); *People v. Morris,* 3 Ill.2d 437, 449 (1954).

■■ Defendant alleges error in the failure of the assistant public defender to withdraw from the case to testify at trial. This argument relies

on the fact that, at the hearing before sentencing, counsel was a witness and testified that one of the occupants of the car (who was not tried) admitted to counsel that he was the front seat passenger who took part in the robbery while McVet was in the back seat. We do not feel defendant has proven counsel's failure to testify constituted incompetency. The decision may as readily have been one of trial strategy or counsel may have reasoned himself to be more valuable as defendant's attorney than as a prospective witness offering evidence of doubtful admissibility. See, *People v. Lettrich,* 413 Ill. 172, 178 (1952).

■■ Defendant then alleges error in the attorney's failure to object, at the sentencing hearing, to the court's request that defendant take a lie detector test. We do not feel that this failure constituted inadequate representation. The propriety of the court's request will be met subsequently, but it appears from the record that the court customarily requested such examinations at sentencing; defendant was as likely to be prejudiced by his failure to take the test as he was by submitting to it. A claim of prejudice may not be sustained on mere conjecture. *People v. Hannon,* 48 Ill.2d 462, 466 (1971).

3. *Defendant argues that two actions of the court encouraged a compromise verdict.*

After the jurors had deliberated for approximately three hours, the court called them out to ask whether they had reached a verdict. The foreman replied that they had as to one defendant and that they were "reasonably close" to a verdict for both. The court directed them to "retire and further consider this case." Defendant claims error in the court's inquiring into the jury's progress.

■■ While it is error for a judge to interfere in jury deliberations by making remarks calculated to effect rendition of a verdict, we do not feel that the court's inquiry in this case was of the nature to unduly influence the jury. *People v. Golub,* 333 Ill. 554, 560-561 (1929).

The court submitted to the jury, verdict forms for both robbery and armed robbery. Defendant contends that if the evidence could support any finding, it could only be for the graver offense.

■■ The general rule is that when an offense includes a lesser offense, a defendant may be convicted of the lesser offense if the evidence is contradictory. *People v. Gilday,* 351 Ill. 11, 21-22. In such cases, a defendant may not complain that an instruction on the lesser charge was given, or that the evidence would have justified the jury in convicting on the more serious offense. See, *People v. Taylor,* 36 Ill.2d 483, 488 (1967).

■■ In the instant case, Prince testified that he was robbed at gun point. He identified the weapon in court. The defense, by pointing out inconsistencies in this identification, attacked the witness' credibility and

raised the question of whether the robbery was, indeed, armed. Neither defendant specifically testified that the driver was armed during the occurrence and evidence shows that the weapon was recovered from the back floor of the car rather than from the person of one of its occupants. Under this evidence, we cannot conclude that the only possible findings were of armed robbery or innocence. The jury was justified in its finding of simple robbery and it was not error for the court to submit the verdict form for that offense. See, *People v. Barksdale*, 131 Ill.App.2d 103, 266 N.E.2d 516, 519 (1970).

*4. Defendant asserts that there was prejudicial error in certain of the prosecutor's cross-examination before the jury.*

 There follows the colloquy pertinent to defendant's silence after he was apprehended:

"Q. Did you ask the police what the problem was? Did you say anything to him?

A. No.

Q. You never said a word to him, Mr. McVet?

A. I didn't say anything.

Q. You never said nothing to him about your innocence in the police station?

A. They never questioned me."

Defendant argues that this line of questioning constituted error because of the absolute right to remain silent. It is true that upon being taken into custody, defendant had the right to remain silent. Ill. Rev. Stat. 1969, ch. 38, sec. 103—2(a). Generally, the exercise of that right is not probative of guilt, and it is error for the State to be allowed to prove that fact. See, *People v. Lewerenz*, 24 Ill.2d 295, 299 (1962). Defendant's silence was not admissible as a tacit admission of guilt. *People v. Aughinbaugh*, 36 Ill.2d 320, 322-323 (1967). In similar factual situations, cases from other jurisdictions have established that it is improper for the State to show defendant's failure to volunteer exculpatory statements. *United States v. Mullings*, 364 F.2d 173, 174-175 (2d Cir. 1966); *Helton v. United States*, 221 F.2d 338, 341-342 (5th Cir. 1955); *State v. Elmore*, 467 S.W.2d 915 (S.Ct. Mo. 1971); *State v. Stuart*, 456 S.W.2d 19, 21-22 (S.Ct. Mo. 1970).

 It seems clear that, in the present case, the cross-examination was error capable of suggesting to the jury that defendant had a duty to speak, and that his failure to do so indicated guilt. However, defendant's failure to object to the questioning constituted a waiver of any objections. *People v. McCorry*, 51 Ill.2d 343, 349 (1972); *People v. Ross (Pawlak)*, 41 Ill.2d 445, 462-463 (1968); *People v. Pulaski*, 15 Ill.2d 291, 298 (1958). There being other ample evidence to sustain the jury's finding of guilt, we do not feel that the cited cross-examination had a de-

terminative effect and, thus, consider the error to be harmless. *People v. Helm*, 40 Ill.2d 39, 47 (1968); *People v. Cavanaugh*, 13 Ill.2d 491, 492 (1958).

5. *The court erred in forcing defendant to take a lie detector test during the sentencing hearing and in denying probation on the results of the examination.*

The record indicates that at the hearing, after defendant and several character witnesses had given testimony in mitigation, the court recalled defendant to the stand. The judge explained that it was his policy to ask a convicted defendant to take a polygraph examination on the theory that there was no necessity of accepting a defendant's word for testimony given regarding past crimes. Making it clear that defendant was not obliged to take the test for reasons that it might incriminate him, the court also made it obvious that it considered the test very important in the following words:

> "Well now, if you wish the Court to further consider your application for probation, the Court is going to request that you submit yourself to a polygraph examination so that the Court will have the benefit of whatever the report of this examiner is concerning your answers * * * whether your answer to those questions before this Court are true or false. And you understand the Court is going to—would consider whatever his determination is * * *."

Before taking the polygraph examination, defendant testified that, excluding the crime for which he stood convicted, he had never committed any criminal offenses. The results of the lie detector test indicated that defendant had committed other criminal acts. Upon being recalled to the stand and being questioned by the court, defendant admitted about five previous "criminal" acts ranging from taking abandoned furniture to robbing while armed with a starter pistol. When the court commented that defendant had concealed his past offenses, defendant answered that he had misunderstood the court and thought the question was whether he had ever been previously convicted. The court denied probation and pronounced sentence.

■■ Decisions of this court have held that polygraph evidence, because of its unreliability, should neither be used nor its use suggested at the sentencing stage of criminal proceedings. *People v. Ackerman*, 132 Ill.App.2d 251, 269 N.E.2d 737, 739 (1971); *People v. Brown*, 132 Ill.App. 2d 256, 269 N.E.2d 735 (1971). The principal of those cases is applicable to the present facts. It is obvious that the trial judge wished to use the polygraph as a truth-determining device, that he conditioned probation upon the taking of the test, and that he deferred his decision on sentencing until that evidence was available.

██ It was error for the court to request defendant to submit himself to the test and impermissible for the court to rely upon the polygraph evidence in reaching its decision in sentencing.

We, therefore, affirm the conviction but vacate the sentence and remand this cause for sentencing consistent with this opinion.

Judgment affirmed; cause remanded for resentencing.

ABRAHAMSON and GUILD, JJ., concur.