THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERIC HYMAN, Defendant-Appellant.

(No. 55980; ■■■■■■■

First District—November 8, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Elliot M. Samuels and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, John O'Rourke, and Roberta K. Cole, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

The defendant was indicted on one count for armed robbery and on two counts for aggravated battery. In a trial by jury he was found guilty of armed robbery and not guilty of aggravated battery, and was sentenced to serve a term of two to six years in the penitentiary. The facts follow.

On July 6, 1970, Ramis Mukaj, the complaining witness, was working the night shift in a Shell Oil station located at Van Buren Street and Racine Avenue in Chicago. While waiting in the office for cars to come in he kept the door locked. At about 2:00 A.M., a man knocked on the window, indicating that he wanted to buy cigarettes. Mukaj unlocked the door and the man went to the cigarette machine. After making his purchase, instead of leaving, he blocked the doorway, preventing Mukaj from closing the door, and admitted a second man who was later identified by Mukaj as the defendant. The second man poked a rifle or shotgun into Mukaj's midsection. Mukaj grabbed for the gun, knocking it to the floor, and in the ensuing scuffle Mukaj was hit on the head three times with the gun. He started to bleed so profusely that he could not see what was going on and could not call the police. About ten minutes later his girl friend came in and called the police at once. The robbers had taken $82.00 from the cash register and fled.

A few days later Mukaj went to Area 4 Robbery Headquarters and identified the defendant out of three or four hundred police photographs.

[He was not able to identify the second man.] On August 10, 1970, Mukaj returned to the police station and identified the defendant from a four-man lineup.

The defense is based on an alibi. The defendant testified that on the evening of July 5, 1970, he had gone to bed at about 9:00 P.M., because he was to apply for a job next day at the "Youth Thing" [Welfare Rehabilitation Service]. At that time defendant was living at 1847 West Lake Street with his mother and brother Robert. Robert testified that he remembered his brother had gone to bed around 9:00 P.M. on the evening in question and that he was in bed at 7:00 o'clock the following morning. He further testified that he and his mother watched television until 11:30 that evening, and that defendant was in bed all that time. He added that since his brother had no key to the apartment, both Robert and his mother would have been awakened if the defendant had left and tried to return. On cross-examination he admitted that on occasion his brother would spend the evening in a friend's apartment in the same building.

Mrs. Hyman was not called by the defense, but was called by the State as a rebuttal witness. She testified that her son always slept at home. The State sought to impeach her, but the court refused to allow the impeachment and struck her testimony.

■■ Defendant contends that by finding him guilty of armed robbery and not guilty of aggravated battery, the jury indicated there was reasonable doubt as to his guilt. It is true that the factual question for the jury to decide was whether defendant was the man involved in the Shell station robbery. The two crimes were factually intertwined, and since each crime was covered by separate counts of the indictment, there was logical inconsistency in the verdict. That does not make it legally inconsistent. (*People v. Taylor*, 56 Ill.App.2d 170.) Such a verdict may well reflect nothing but an exercise by the jury of leniency. (*Dunn v. United States*, 284 U.S. 390.) The cases cited by defendant are non-jury cases, and in those the inconsistency of the finding is considered reversible error. (*United States v. Maybury*, 274 F.2d 899 (2d Cir. 1960).) In the instant case a jury verdict is involved, and we find no basis for reversible error.

■■ Defendant contends that the State's evidence fails to establish his guilt beyond a reasonable doubt. The jury is in a far better position than a court of review to judge the credibility of witnesses, and their findings will not be disturbed unless palpably erroneous. We have reviewed the record and are satisfied that the guilt of defendant was established beyond any reasonable doubt.

Defendant next contends that he was seriously prejudiced when the

State called his mother as a rebuttal witness and cross-examined her in an effort to impeach her. The specific facts in connection with this phase of the case follow.

On July 19, 1970, Mrs. Hyman told Detective Raymond Soltis that the defendant hardly ever came home except for an occasional visit. The State, finding this evidence helpful, included Mrs. Hyman in its list of witnesses filed on September 11, 1970. On October 28, 1970, the defense led a notice of alibi defense which listed Mrs. Hyman as a witness. Based on this and the natural family relationship, it was reasonable for the State to conclude that Mrs. Hyman's testimony would be helpful to defendant. It is not surprising then that she was not called to testify for the State in its case-in-chief, but when the defense put on its case without calling her it was reasonable for the State to assume that her testimony would indeed be helpful to the prosecution.

It was against this background that defendant's mother was called by the State as a rebuttal witness. Her testimony was not what had been expected, based on her earlier statement and the defense's conspicuous failure to call her. She testified that defendant always slept at home. The prosecutor then claimed surprise and asked permission of the trial court to cross-examine her. The request was denied, incorrectly, in our opinion. ■■■ In view of Mrs. Hyman's earlier statement to Detective Soltis, and the failure of the defense to call her to testify, it was reasonable for them to expect her to testify in accordance with her earlier statement to the police investigator, and when her testimony was in complete opposition to the expected, the State had a right to cross-examine in an effort to impeach her. As the court held in *People v. Wesley*, 18 Ill.2d 138, 151:

> "[W]here the witness unexpectedly gives testimony against the party calling him, such party has the right of examination to show that the witness gave surprise testimony and to specifically call his attention to former inconsistent statements made by him for the purpose of refreshing his memory or awakening his conscience to the end that he may relent and speak the truth if he is lying."

Therefore, if it was proper for the State to impeach Mrs. Hyman, it follows that the unsuccessful attempt in the instant case was proper and the trial court's refusal to allow the State to continue, while erroneous, operated to defendant's benefit. We find no merit in this contention.

Defendant contends that he was prejudiced when the prosecutor commented in closing argument on the failure of the defense to call Mrs. Hyman as an alibi witness. As previously stated, Mrs. Hyman was called by the prosecution in rebuttal. Her testimony was favorable to defendant, and the trial court refused to allow the prosecution to impeach her. Her testimony was stricken, and the jury was instructed to disregard it. We

assume that the jury complied with the trial court's instruction; however, it is very likely that the jury retained the impression that her testimony would have been helpful to defendant's case.

■■ Moreover, it was a witness for the defense who first made reference to the fact that defendant was at home, in bed, on the evening in question; that defendant had no key to the apartment; that Mrs. Hyman would have known if he left during the night. Where the defense presents evidence of defendant's activities with witnesses during the time the offense is supposed to have occurred, the State may comment on his failure to produce them. *People v. Gray*, 57 Ill.App.2d 221.

■■ Defendant contends that the trial court erred in permitting a police photograph to be admitted into evidence and to be taken by the jury into the jury room. Such photographs are properly admissible when they are for the purpose of showing how defendant could have been identified from them and not merely to prejudice the jury by showing prior unrelated encounters with the police. *People v. Purnell*, 105 Ill.App.2d 419.

■■ Also admitted into evidence, without objection, was a certified conviction dated January 30, 1970. Although it was admitted subsequent to the photograph, the State offered to stipulate that the picture "was taken in connection with the arrest conviction on January 20, 1970." The defense refused. Had the offer been accepted there can be no doubt that there would be no prejudice to defendant, as the photograph would then be tied to the conviction. Defendant should not be allowed to complain because this offer by the State was refused.

■■ Defendant contends that his sixth amendment rights were violated because he was not represented by counsel at the lineup where he was identified by Mukaj. In *United States v. Wade*, 388 U.S. 218, the United States Supreme Court held that a defendant is entitled to an attorney at a lineup. However, the Illinois courts have restricted this rule to post-indictment situations. (*People v. Palmer*, 41 Ill.2d 571; *People v. Cesarz*, 44 Ill.2d 180.) This view has recently been adopted by the United States Supreme Court in *Kirby v. Illinois*, 406 U.S. 682. Inasmuch as the lineup in the instant case occurred prior to the indictment, defendant's contention is without merit.

The defendant was found guilty beyond all reasonable doubt, and we find no basis for reversal.

Judgment affirmed.

HAYES and LEIGHTON, JJ., concur.