THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES ISAAC SMITH *et al.*, Defendants-Appellants.

(No. 59436;

First District (1st Division)—June 17, 1974.

Paul Bradley and Margaret Maxwell, both of the State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURKE delivered the opinion of the court:

James Isaac Smith and Joseph Smith, defendants, were found guilty after a jury trial of the crime of murder in violation of section 9—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—1). Both defendants were sentenced to terms of 60 to 120 years. On appeal, defendants argue (1) that the evidence was insufficient to establish their guilt beyond a reasonable doubt; (2) that the trial court erred in admitting photographs of the deceased into evidence; (3) that the trial court erred in admitting "mug shots" of the defendants into evidence; and (4) that the State's closing argument was prejudicial.

At trial, Dr. Julius B. Richmond testified that he is the father of Dale K. Richmond. Dr. Richmond testified that he last saw his son in Chicago in the middle of October, 1971, and at that time his son was alive and in good health. On October 27, 1971, he identified his son's body at the Cook County Morgue.

Edward C. Palmer was called as a witness by the State and testified that on October 27, 1971, at 12:15 A.M., he was walking on 54th Street in the vicinity of Dorchester Avenue in Chicago, Illinois, when he observed a white man meet a black man. After talking for a couple of

seconds, the two men began struggling and striking one another. A second black man appeared with a knife in his hand and began stabbing the white man in the back. The white man fell to the ground and the black man continued to stab him while the other black man went through the pockets of the white man. Thereafter, both black men ran and the white man got up and started to follow the black men down the street. The witness further testified that he had seen one of the black men prior to the incident and he identified the two black men as the defendants, James Smith and Joseph Smith. Mr. Palmer testified that Joseph Smith had the knife.

On cross-examination the witness testified that he is a narcotics addict. He admitted that on October 27, 1971, he was a narcotics addict and had taken narcotics that day. Mr. Palmer testified that the last time he had used narcotics was 3 days prior to testifying. On April 11, 1972, the witness talked to Officers Fitzgerald and Boucher. At that time, he was shown several photographs and identified photographs of the two defendants as the men he had seen stab the deceased. Mr. Palmer stated that between the date of the incident and the time he met Investigators Fitzgerald and Boucher, he did not tell any other police officer that he had observed the incident.

Oliver Van Collins testified that on October 27, 1971, at approximately 12:15 A.M., he was walking through a school yard in the vicinity of 54th and Dorchester Avenue in Chicago, Illinois, when he heard someone scream. He then heard footsteps and as he turned around he saw the two defendants run across 53rd Street. The defendants were approximately 100 feet away. There were street lights and a neon sign from a "chicken shack" illuminating 53rd Street. In March, 1972, police officers came to his home and interviewed him. Subsequently he identified photographs of the two defendants as the men he had seen run across 53rd Street. He did not report what he had seen to the police department until March 23, 1972.

William V. Wheeler testified that he was a bartender for the Eagle Lounge at 53rd and Blackstone in Chicago, Illinois, between July and December, 1971. On December 23, 1971, he was shown 8 to 10 photographs by Investigator Baxter. He identified photographs of the defendant, Joseph Smith, as the man he had seen in the Eagle Lounge on approximately October 27, 1971. On cross-examination Wheeler stated that he could not remember the exact date Smith had been in the lounge.

Chicago Police Office John M. Krystyniak testified that on October 27, 1971, pursuant to a call, he proceeded to the area of 54th and Dorchester Avenue where he observed a man lying face down on the sidewalk in a prone position. He immediately called for transportation for the victim

who was taken to Billings Hospital. Thereafter, the officer observed that around where the victim was lying, there was a large pool of blood and a trail of blood. Officer Krystyniak testified that he followed the trail of blood to 1410 East 54th Street.

Chicago Police Sergeant John Ferguson testified that he was assigned the investigation in the case at bar. On October 27, 1971, he proceeded to the crime scene and observed a pool of blood where the victim had been lying. Leading from the pool of blood there was a trail of blood which he followed to 1410 East 54th Street.

Chicago Police Sergeant John Fitzgerald testified that pursuant to his investigation, he spoke with Oliver Van Collins, who was shown photographs of possible offenders. He testified that Mr. Van Collins initialed two photographs in the group of photographs denominated as People's Group Exhibit 16; namely, one photograph of defendant Joe Smith and one of defendant James Smith. Sergeant Fitzgerald testified that on April 11, 1972, he also interviewed Edward Palmer. Mr. Palmer was shown certain photographs and he made an identification.

Dr. Jerry Kearns, a pathologist for the coroner of Cook County, testified that on October 27, 1971, he performed an autopsy on the body of decedent, Dale Richmond. His examination revealed 14 stab wounds; namely, three in the chest, one below the rib cage, one in the posterior part, one in the back, two in the left forearm, one in the upper left arm, two in the right arm, two in the right thigh and what resembled a scratch mark across the front of the chest. The deceased's right hand was swollen. Dr. Kearns testified that in his opinion, Dale Richmond came to his death as the result of multiple stab wounds to the chest, abdomen and the extremities.

■■ Defendants' first contention on appeal is that the evidence was insufficient to establish guilt beyond a reasonable doubt. Defendants argue that the testimony of Edward Palmer, an admitted narcotics addict who did not report the incident to the police for several months, was totally unreliable and was essentially uncorroborated. The testimony of a narcotics addict must be viewed with great caution. (*People v. Jordan*, 5 Ill.App.3d 7, 282 N.E.2d 530.) However, that testimony may be sufficient to sustain a conviction if credible under the surrounding circumstances. *People v. Norman*, 28 Ill.2d 77, 190 N.E.2d 819; *People v. Barnes*, 133 Ill.App.2d 278, 273 N.E.2d 240.

■■ In the present case, Edward Palmer testified that on October 27, 1971, at 12:15 A.M., he observed both defendants fighting with the deceased and saw Joseph Smith stab the deceased repeatedly. Both defendants then fled the scene. While Mr. Palmer at trial admitted that he is a narcotics addict and that he did not report the incident to the police for

several months, this conduct presents a matter of credibility. In a jury trial, credibility of witnesses is for the jury to determine and their determination will not be disturbed unless it is based upon evidence which is so unsatisfactory as to raise a reasonable doubt of defendants' guilt. (*People v. Riles*, 10 Ill.App.3d 772, 295 N.E.2d 234.) Here, after hearing all of the evidence, the jury chose to believe the testimony of Edward Palmer. Moreover, Mr. Palmer's testimony was corroborated by the testimony of Oliver Van Collins who stated that he observed the two defendants run across 53rd Street a short distance from the scene of the murder shortly after hearing someone scream. After a review of the entire record, we cannot say that the jury's determination was erroneous.

■■ Defendants' second contention is that the trial court erred in admitting photographs of the deceased taken at the Cook County Morgue which showed surgical punctures because such photographs were highly inflammatory and cumulative. Photographs are admissible to establish facts in issue. (*People v. Dagge*, 10 Ill.App.3d 726, 295 N.E.2d 336.) The admission of photographs at trial rests within the sound discretion of the trial court and the exercise of that discretion will not be interfered with unless it is shown that there has been an abuse thereof to the prejudice of the accused. *People v. Nicholls*, 42 Ill.2d 91, 245 N.E.2d 771.

■■ Here, the photographs of the deceased corroborated the testimony of Dr. Kearns as to the number and position of stab wounds and as to the fact that the deceased had a swollen hand. The photographs were also relevant to demonstrate the amount of force used in the murder. (*People v. Speck*, 41 Ill.2d 177, 242 N.E.2d 208.) We are of the opinion that the trial judge did not abuse his discretion by admitting the photographs into evidence.

Defendants' third contention is that the trial court erred by admitting into evidence "mug shots" of both defendants. At trial, the State introduced into evidence photographs of both defendants which had been identified by witnesses Palmer and Van Collins. The photographs depicted each defendant with three different views; front face, profile and full view. Around the neck of each defendant was a legend which was marked over before the pictures were given to the jury. The photographs of a defendant from which he was identified are admissible into evidence for the purpose of showing how the defendant could have been identified from the photographs and not merely to prejudice the jury by showing prior encounters with the police. *People v. Hyman*, 8 Ill.App.3d 382, 290 N.E.2d 627.

■■ In the case at bar, there was a span of over 5 months between the murder and the subsequent identification of the defendants from police photographs by the State's witnesses. The photographs were relevant to

demonstrate the manner in which the defendants were identified. The legends on the photographs were marked out prior to their being given to the jury. When viewed in light of all of the evidence presented at trial, we do not believe that the admission into evidence was so prejudicial as to require a reversal.

Defendants argue that the trial judge did not instruct the jury to limit their consideration of the photographs to the issue of identification. A review of the jury instructions demonstrates that the defense did not tender such a jury instruction. It is a well established rule that a defendant cannot complain on appeal of failure to give a jury instruction when he did not request that such instruction be given. *People v. Springs*, 51 Ill.2d 418, 283 N.E.2d 225.

■■ Defendants' final contention is that they were prejudiced by the inflammatory closing argument of the prosecution. It is an established rule that improper remarks by a prosecutor do not constitute reversible error unless they result in a substantial prejudice to the defendant. (*People v. DeSavieu*, 11 Ill.App.3d 529, 297 N.E.2d 336; *People v. Nilsson*, 44 Ill.2d 244, 255 N.E.2d 432.) In the present case, we have reviewed each of the alleged errors defense counsel has pointed out in his brief. Although certain of the prosecutor's comments were improper, when considered in light of the entire record, they are not sufficient to require a reversal. As the Illinois Supreme Court stated in *People v. Clark*, 52 Ill.2d 374, 390, 288 N.E.2d 363, 372:

"* * * We noted in *People v. Swets*, 24 Ill.2d 418, 423; 'While the comments exceeded the bounds of propriety, we do not think that under the circumstances of this case they were sufficiently prejudicial to call for a reversal. Where it appears that improper remarks do not constitute a material factor in the conviction, or that they are of such a minor character that prejudice to defendant is not their probable result, the verdict will not be disturbed.' *People v. Stahl*, 26 Ill.2d 403, 405; *People v. Berry*, 18 Ill.2d 453, 458; *People v. Sustak*, 15 Ill.2d 115, 126."

For the foregoing reasons, the judgments are affirmed.

Judgments affirmed.

EGAN, P. J., and GOLDBERG, J., concur.